(125 So. 662)

HENLEY et al. v. FOSTER. (5 Div. 20.)

Supreme Court of Alabama. Jan. 16, 1930.

Omar L. Reynolds and J. B. Atkinson, both of Clanton, for appellants.

C. C. Nesmith, of Birmingham, for appellee.

BOULDIN, J. Louise Henley, a child of tender years, through her guardian, filed the bill for the ultimate purpose of adjudicating her legitimacy, and right to take as heir and distributee of the estate of Clyde Henley, deceased.

The case made by the record, briefly stated, is this: Complainant is the child of Clyde Henley and Jennie Henley, of antenuptial conception but born during lawful wedlock.

A few days after the marriage, the husband filed a bill for divorce upon the ground of pregnancy without his knowledge or agency. The wife defended. After many months a collusive arrangement was made between them whereby the divorce proceedings were amended, and the cause made to proceed as one to nullify the marriage on the ground of mental incapacity of the man due to his drunkenness at the time.

The bill was amended, formal answer filed, proof taken and submission had by consent, and decree rendered all on the same day. Admittedly a decree nullifying the marriage, adjudicating that no marriage has ever existed, bastardizes a child of antenuptial conception, whose legitimacy rests upon birth during lawful wedlock. The bill seeks to avoid this decree for collusion and fraud in so far as it affects the status of complainant. Without question, the proceedings were entirely friendly, fully known to, and participated in by both parties; the wife saying nothing as a witness in denial of the husband's evidence, and agreeing to accept $200 in satisfaction of all property claims against the husband.

The evidence taken in the present cause, coming largely from disinterested witnesses, and not controverted, discloses that the allegation of drunkenness was wholly false, a mere fabrication.

The proof that Clyde Henley was in fact the father of the child, in the nature of the case, is not so absolute. The unequivocal testimony of the mother, however, with much corroborative circumstantial evidence, stands unchallenged by countervailing evidence.

The evidence well supports the finding of facts by the trial court.

The questions of real difficulty go to the law of the case. Has a child a standing in a court of equity to challenge a decree fixing the marriage status of his or her parents because of collusion and fraud on their part?

Patently the bill is not to be supported on principles relating to suits in equity to vacate judgments or decrees for fraud in their procurement, fraud by one party as against the other. Cases of that character are not in point.

Neither party to a collusive decree, a fraud upon the court, has any standing in the absence of some element of overreaching, or of dominant influence, to obtain relief against his own fraud. 2 Schouler, Dom. Rel. (6th Ed.) § 1744.

Third persons, however, not parties to the suit, but whose equitable or legal rights are affected by the status arising from a collusive or fraudulent decree, may, in a wide range of cases, challenge the same in equity. As well said in a Tennessee case, a collusive and fraudulent decree between husband and wife is no more effective as to the property rights of third persons than a fraudulent deed between them. Travis v. Sitz, 135 Tenn. 156, 185 S. W. 1075, L. R. A. 1917A, 671; Shamblin v. Hall, 123 Ala. 541, 26 So. 285; 34 C. J. p. 526, § 832, and note.

Divorce proceedings having to do with the marriage status between one man and one woman involve questions of social order.

Matters of public policy, peculiar to family life, enter into the equation.

Broadly speaking, no third person is entitled to intervene in divorce suits; even children, vitally affected as the necessary result of the breaking up of the family, cannot interfere in such proceedings between their parents. A court of equity, exercising a guardianship over infants within its jurisdiction, is charged with the duty of making such provision as it may for their custody and support upon granting a divorce; but divorce cannot be refused upon proven statutory grounds because children may be involved. 2 Schouler, Dom. Rel. (6th Ed.) § 1147; Baugh v. Baugh, 37 Mich. 59, 26 Am. Rep. 495.

Annulment proceedings differ materially from those for divorce. Divorce with us is statutory. Annulment rests upon general equity powers. Divorce fixes the future marital status; annulment, that of the past and present. Still, they are kindred proceedings. Both relate to the marriage status; both concern the social order.

Our statutory grounds of divorce cover some cases of void marriages, such as incurable physical incapacity to enter into the marriage state. We may note that a divorce in favor of the husband 'for the pregnancy of the wife, such as sought by the original bill between these parties, bastardizes the issue.

A nullity decree may be and is properly granted upon a void marriage as in insanity cases (Rawdon v. Rawdon, 28 Ala. 565); or may be granted upon a voidable marriage, one subject to ratification, but not ratified, as in the case of drunkenness (Schouler, Dom. Rel. § 1105; Barber v. People, 203 Ill. 543, 68 N. E. 93).

Assuming that a child may not intervene or become a party either in divorce or annulment proceedings, the question recurs whether a child, bastardized by a fraudulent and collusive decree of annulment on the part of the parents, may avoid such decree in so far as it affects the legal rights of such child?

Speaking generally of the right of third persons, not permitted to take part in divorce proceedings, to avoid the same for fraud by collateral attack, Mr. Bishop says: "And the doctrine is settled that in some way, hence necessarily in this way, any third person against whom a fraudulent divorce sentence is produced may avoid it by showing the fraud; since fraud in these causes, as in all others, vitiates every judgment into which it enters." 2 Bishop on Marriage, Divorce and Separation, § 1567, p. 596.

The cases cited in the note fully sustain this text. See 2 Kent. Com. 109; Story, Confl. Laws, § 597; Jackson v. Jackson, 1 Johns.

(N. Y.) 424; Roemer v. Denig, 18 Pa. 482; Carroll v. Cockerham, 38 La. Ann. 813.

No case is found in this country applying the doctrine to a child situated as in this case. Naturally such a case would rarely arise.

In England, however, it is declared as of course that the child may in equity avoid a decree of this class for fraud and collusion on the part of the parents. Harrison v. Southampton, 21 Eng. L. & Eq. 343.

We can see no good reason why the child may not have relief as other third persons not permitted a hearing in the original proceeding. The child has personal as well as property rights involved. Legitimacy is favored in the law. Infants are the special objects of the care of courts of equity.

Just as in other cases avoiding transactions for fraud, the decree need not and should not disturb the marriage status as between the parents, parties to the decree, nor disturb any rights of others growing out of such decreed status, save as they stand in the way of doing equity to the defrauded complainant. Such was the decree rendered here. We approve the well-chosen words of the trial court in his opinion: " * * * It appears to the Court that natural justice and equity of the matter would dictate a holding that no child should be deprived of his birthright and rendered illegitimate by such collusive actions of its parents. A status of legitimacy is a right of value and should have the same protection as property rights against fraud and collusion of others."

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.