JEROME A. DENBERG, Appellant, v. EDNA R. D. FRISCHMAN, Defendant and Third-Party Plaintiff-Respondent. ANNETTE FRISCHMAN et al., Third-Party Defendants.

First Department, November 4, 1965.

*Garry G. Blaustein* for appellant.

*Louis A. Breslerman* for respondent.

BREITEL, J. The issue is whether a former husband's obligations under a separation agreement may be revived after the former wife's remarriage, subsequently determined to be void because the second husband's divorce from his first wife was nullified. The question arises in an action by the first husband for a declaratory judgment in which his motion for summary judgment pursuant to CPLR 3212 was denied. He appeals.

While CPLR 3212 (subd. [d]) forbids the granting of summary judgment to a plaintiff in matrimonial actions, this is not such an action. Plaintiff, the former husband, seeks a declaration and associated relief not as to marital status but as to his obligations under the separation agreement.

The Court of Appeals, in *Gaines* v. *Jacobsen* (308 N. Y. 218) has held in similar circumstances that a support obligation was not revived by annulment of a former wife's second marriage. Special Term construed the opinion in the *Gaines* case as narrowing the holding to situations where a wife, notwithstanding an annulment, is entitled to support from her second husband under section 1140-a of the former Civil Practice Act (now Domestic Relations Law, § 236) or a comparable statute of another State. Since New Jersey law, which governed defendant wife's remedies against her second husband, did not permit comparable relief, Special Term denied plaintiff husband's motion for summary judgment.

Because it is concluded that the *Gaines* case laid down a more general rule than was recognized by Special Term and expressly discarded the prior rule of *Sleicher* v. *Sleicher* (251 N. Y. 366), its holding may not be so narrowly read. The references in the *Gaines* case to statutory changes and the state of the law before those changes were only in explanation of the policy considerations which at the time had generated the prior rule in the *Sleicher* case. Consequently, the order denying plaintiff husband summary judgment should be reversed and the motion granted.

The recent history of the parties and their relationship, especially in the bitter litigations between them, is unsavory. They were married in 1941 and have three children. In 1961 they entered into a separation agreement, the one in suit. Under the agreement the wife was to receive, for her own support after the first year, $50 per week " so long as she does not remarry," and, subject to the same limitation, was to be the beneficiary of certain life and medical insurance policies. In that same year the parties were divorced. The husband remarried and is still married, so far as the Court knows, to his second wife. Thereafter, on January 29, 1964, the wife married one Seymour Frischman, the purportedly divorced husband of the plaintiff husband's sister. The two families, before their excursion into divorce and remarriage, had been neighbors and in close family social relations.

The infant children of the marriage were awarded to the wife, but according to her, the husband has " enticed " them away, and they are living with him. There has been litigation over the custody of the children.

After the wife's remarriage she made no demand for support payments from plaintiff husband, and while he mailed seven or eight checks before he learned of defendant wife's remarriage, they were never cashed. In July, 1964 the unilateral Mexican divorce obtained by Frischman (the wife's

second husband) was declared by the Superior Court of New Jersey to be null and void. The action had been brought by Frischman's first wife (plaintiff husband's sister), instigated, defendant wife states without contradiction, by plaintiff husband. Defendant wife, therefore, never having been the lawful wife of Frischman, and having evidently separated from him, in her answer to the complaint in this action demanded resumption of support from her first husband under the separation agreement in suit.

Prior to *Gaines* v. *Jacobsen* (*supra*) it had been held in *Sleicher* v. *Sleicher* (*supra*) that a first husband's obligation to support under a separation agreement, with a conditional limitation similar to that here, was revived upon the annulment of the wife's remarriage on the ground of the second husband's fraudulent concealment of his insanity. Chief Judge CARDOZO, in the opinion for the Court, refused to apply the reasoning of the rule in *American Sur. Co.* v. *Conner* (251 N. Y. 1), in which he had also written the opinion for the Court, and in which it had been said that an annulment of a marriage did not obliterate the facts and consequences of past events. This refusal, as noted by Judge FULD in the *Gaines* case, and as Chief Judge CARDOZO had himself observed, rested on a legal fiction of relation back created solely for the purposes of justice.

The *Sleicher* rule was expressly discarded in the *Gaines* case. In refusing to accord further viability to the old rule, Judge FULD on behalf of his Court, observed that the background conditions which had generated the *Sleicher* rule no longer obtained. Then there could be no provision for support of a wife by a null marriage, whereas since, the courts had been given power by statute to provide support (Civ. Prac. Act, § 1140-a, now Domestic Relations Law, § 236). The historical analysis was given only by way of explanation in overturning the old aberrational rule and not by way of limitation of the effect of the new rule in the *Gaines* case. This reading of the *Gaines* case is supported on two bases.

In the first place, in the *Gaines* case, Connecticut and not New York law was applicable (308 N. Y. 218, 222–223, *supra*). But because no proof of Connecticut law was adduced, the court, citing *International Text Book Co.* v. *Connelly* (206 N. Y. 188, 201) as its authority for so doing, assumed the law of Connecticut to be the same as New York's (*Gaines* v. *Jacobsen, supra,* p. 222). As expressed in the *International Text Book* case, however, the law applicable under such a presumption was New York's prestatutory, common law, dating back to a period of time prior to enactment of section 1140-a of the Civil Practice

Act (see, also, *Selles* v. *Smith,* 4 N Y 2d 412, 414 [FULD, J.]). Therefore, the decision in the *Gaines* case of necessity included the premise that it was immaterial whether Connecticut had the statutory equivalent to section 1140-a — just as in the present case. (Actually, there was a relevant Connecticut statute, see Conn. Gen. Stat. Ann., § 46–28.)

In this case, as noted earlier, the wife's second marriage has a New Jersey locus, as does the annulment. Also, as noted earlier, New Jersey has no statutory equivalent to section 236 of the Domestic Relations Law (formerly Civ. Prac. Act, § 1140-a). Hence, she has no seeming recourse, she says, against the second husband (see *Minder* v. *Minder,* 83 N. J. Super. 159).

In the second place, Judge FULD, in the *Gaines* case, made explicit that the Court was construing an agreement the terms of which must be interpreted in accordance with the manifested intention of the parties and not subject to judicial revision from time to time as circumstances might change. Thus, he said (pp. 223–224): "The subsequent fortunes of the remarriage, and whether or no it is later terminated, are in no way material to the agreement; the husband's obligations are by its terms to continue only until she remarries, and there is nothing in the agreement which can serve as a basis for subsequently reviving those obligations. No one contends that they would be revived if the remarriage ended in divorce (see *Nelson* v. *Nelson,* 282 Mo. 412, 418; *Brandt* v. *Brandt,* 40 Ore. 477), and it is difficult to see any reason for a different result when it ends in annulment. It is certainly unlikely that the parties intended the result to turn upon whether an unsuccessful remarriage is deemed in law void — as is the one in this case (Domestic Relations Law, § 6) — or voidable (Domestic Relations Law, § 7) or valid, until dissolved by a decree of divorce. Rather, the understanding must have been that, upon the wife's remarriage, the husband could regard himself as free of the duty to support her. He could then assume new obligations — he could himself remarry, if he were of a mind to, but his means limited — without remaining forever subject to the possibility that his first wife's remarriage would be annulled and the burden of supporting her shifted back to him. And the wife, too, must have understood that by remarrying she abandoned her rights to support under the agreement, for better or for worse, in favor of whatever support would be furnished her by her second mate."

Judge FULD went on in his opinion to discuss the policy origins of the *Sleicher* rule, and then, to wipe the slate clean, he questioned its doctrinal basis, pointing out various situations in

which the law gives standing to an annulled marriage: as consideration for a gift in contemplation of marriage, to make a remarriage by one of the parties during its continuance bigamous, and, by statute, to legitimatize any children born of the union (308 N. Y. 218, 225).

This return to primary principles of construction of a separation agreement and to realistic recognition of the facts of a marriage annulment is, of course, especially appropriate in the light of present practices and the law with respect to the matrimonial relationship. The divorces and remarriages contemplated in a separation agreement, whether openly mentioned or only implied, including those that follow coincidentally and shortly after execution of the agreement, are most often extra-State or affected by extra-State events, with consequential legal problems. The answers to these problems are only sometimes set to rest by the latest advance sheets to the reports. Moreover, there is no possible control, judicial or otherwise, over when such remarriages may be annulled or at whose suit.

Thus, if the *Gaines* rule were not applicable, many years may pass. The first husband may have remarried, as did the one in the *Gaines* case, and as did plaintiff husband in this case. New families may have been established on the basis of the seeming duty to support but one family. Innocents, in the way of subsequent wives of such husbands, and the children of such unions may suffer, because the first wives may have made foolish errors in their remarriages. At the same time plain language with the plainest of manifested intention would be distorted to effect an assumed substantial justice based on subsequent events not necessarily within the control or contemplation of the immediate parties to the agreement. Chaos and trouble enough already exist in this troubled field without adding new chaos and new trouble.

Of course, this case, with some equivalents, perhaps, to the poignant elements in the *Sleicher* case, may suggest or tempt a contrary disposition. Here, the void remarriage was of short duration—less than a year. The original marriage was of many years standing and three children were born of it. To add the bitterest sting, it is probable that the first husband instigated the annulment proceedings initiated by his sister, although it would not take much to activate a wife to retaliate against a former sister-in-law who has " broken up " her family.

The problem posed by this case has arisen elsewhere. Generally, the conclusion has been in accord with the doctrine and analysis in the *Gaines* case, although there have not been so many cases that one might say the generalization is entrenched

(see, e.g., *Sefton* v. *Sefton,* 45 Cal. 2d 872; *Gerrig* v. *Sneirson,* 344 Mass. 518; *Nott* v. *Folsom,* 161 F. Supp. 905 [WEINFELD, J.], but, see, opn. affg. *sub nom. Nott* v. *Flemming,* 272 F. 2d 380; semble contra, *Minder* v. *Minder,* 83 N. J. Super. 159, *supra*).

The *Sefton* case is particularly supportive of the view taken here, inclusive of the analysis of the rationale in *Gaines* v. *Jacobsen* (*supra*). The majority, per Mr. Justice SHENK, discussed the doctrine in the *Sleicher* case, the overruling of that doctrine in the *Gaines* case, and the artificiality and the limitations on the discarded doctrine of "relation back." Although California had no statute providing for the support of the wife of an annulled second marriage, it was held that there was no revival of the right to support from the first husband under a pre-existing conditional separation agreement. Significantly, the sole dissenter in the California court, Mr. Justice EDMONDS, in arguing his position, gave the narrower reading to the *Gaines* opinion, namely, that the New York case was bottomed solely on the enactment since the *Sleicher* case of section 1140-a of the Civil Practice Act.

In the *Gerrig* case the high court of Massachusetts analyzed the problem from the point of view of construing the agreement and what it actually meant to the parties to the agreement. Thus it said (pp. 520–521): "The plaintiff supports his argument by quoting from *Southworth* v. *Treadwell,* 168 Mass. 511, 513, where a revision of a decree for alimony was upheld on the ground that the wife's remarriage gave her 'the right to be supported by another man.' But we are of opinion that the right to be so supported is not the only consideration as affecting interpretation of the contract before us, a party to which should be entitled to rely upon the appearance of things. Where the wife entered into another apparent marriage, the contract should not be read as contemplating an intermittent 'alimony' obligation subject to reinstatement by her going beneath the surface and disclosing circumstances to which the defendant was in no way privy. Where the defendant has no reasonable means of discovering such circumstances, the contract cannot be interpreted as contemplating that he can act only at peril in ordering his own affairs in reliance on appearances."

The scope of the holding in the *Minder* case, in which a seemingly contrary conclusion was reached by the New Jersey court, is not too clear. The court emphasized that the wife's second marriage was the result of her mental incompetence and therefore involuntary action. On the other hand, the conclusions of District Judge WEINFELD in the *Nott* case are particularly strong because the case before him involved no prior separa-

tion agreement but only the right of the wife to claim a resumption of benefits under the Social Security Act following the annulment of a subsequent marriage. In holding as he did Judge WEINFELD was applying New York law and construing the *Gaines* rule. He distinguished Federal decisions in which the contrary law of other States had been applied.

In final analysis, the courts do and must apply general rules to situations that come before them. To riddle the *Gaines* rule with exceptions to avoid a particular result in a particular case may produce a host of injustices in the cases to follow. To make such exceptions without a firm rational basis is even more perilous. As important, parties who negotiate arrangements in this area must have some firm basis for making their agreements. After all, it is the remarrying spouse who has stumbled, and who is to say where the genesis of the fault first arose.

There is one counterclaim in defendant wife's answer which does not fall under the discussion thus far had. The second counterclaim alleges that plaintiff husband has enticed two of the minor children of the marriage from the custody of the wife and has failed to make support payments for their benefit as directed by various court orders. Neither party has addressed himself to the issues under the counterclaim. It should be severed from the rest of the action and defendant wife, if she is so advised, may pursue it.

Accordingly, the order denying plaintiff's motion for summary judgment on the complaint should be reversed on the law, without costs or disbursements to any party, the motion granted, and the action severed as to the second counterclaim.

BOTEIN, P. J., VALENTE, McNALLY and WITMER, JJ., concur.

Order, entered on April 23, 1965, unanimously reversed, on the law, without costs or disbursements to any party, the motion granted, and the action severed as to the second counterclaim.