FRANK M. DEWALL, appellee, v. VERNA RUTH RHODERICK, also known as VERNA RUTH DEWALL, appellant.

No. 51844.

(Reported in 138 N.W.2d 124)

NOVEMBER 16, 1965.

REHEARING DENIED JANUARY 11, 1966.

Sifford, Wadden & Davis, of Sioux City, for appellant.

Wm. A. Shuminsky, of Sioux City, for appellee.

MOORE, J.— ■ This is a declaratory judgment action by the divorced husband to construe the stipulation of settlement provision and divorce decree adopting it that monthly alimony payments cease upon remarriage of the divorced wife. She did remarry but this marriage was subsequently declared void and annulled. When defendant herein demanded plaintiff resume alimony payments he commenced this action. The trial court held plaintiff had no further obligation to pay alimony. Defendant has appealed. We do not agree with the holding.

Prior to November 17, 1961, the parties were husband and wife and parents of four children. On that date they entered into a stipulation of settlement of their pending divorce case. Among other things it provided for $250 child support and $50 alimony per month and that as each child reached 18 the child support was to be reduced. It also provided: "That when the youngest child, Dennis Klaas DeWall, reaches the age of eighteen, then all support money payments shall terminate and the alimony payable to the plaintiff shall be increased from the sum of $50.00 per month to the sum of $100.00 per month but in the event plaintiff shall remarry then the provision for alimony made for her herein shall cease by reason of said remarriage."

On November 17, 1961, defendant-appellant (plaintiff in the divorce proceeding) was granted a decree of divorce which expressly approved and made the stipulation a part thereof.

On September 23, 1963, defendant went through a formal marriage ceremony with Robert A. Rhoderick and three days later by letter informed plaintiff of that fact and to stop paying the monthly alimony. He was current with support payments but then ceased paying alimony.

Within a month Rhoderick admitted he had a living wife and child, showed their picture to defendant and her daughter and then left. Defendant testified the marriage was never consummated.

On November 9, 1963, defendant commenced an annulment action against Rhoderick. Her petition alleged Rhoderick had a living wife at the time of his purported marriage to her and he fraudulently induced her to marry him. Service of notice was by publication.

A decree of annulment entered March 31, 1964, found the allegations of the petition were true and "the marriage entered into was and is void and should be annulled" and that plaintiff (defendant here) "should be restored to her status as it existed at the time of and before said marriage."

On April 2, 1964, defendant-appellant by letter requested resumption of alimony payments. She expressly waived any alimony that might be due and unpaid. Plaintiff then brought this declaratory judgment action.

The sole issue presented on this appeal is whether the provision for payment of alimony by plaintiff contained in the stipulation and approved by the divorce decree was permanently extinguished by defendant's purported marriage to Rhoderick.

This precise question has not previously been decided by this court. Analogous cases in other jurisdictions do not reach a unanimous result. The variance of statutes seems to be the primary cause of disagreement. Where void remarriages are involved the majority rule is the alimony requirement is not cut off.

Section 595.19, Code, 1962, provides: "Marriages between the following persons shall be void: * * * 4. Between persons either of whom has a husband or wife living, but, if the parties live and cohabit together after the death or divorce of the former husband or wife, such marriage shall be valid."

Section 598.19, Code, 1962, provides: "Marriage may be annulled for the following causes: * * * 3. Where either party had a husband or wife living at the time of the marriage, * * *."

In addition to the court's holding in the annulment case, the record here discloses plaintiff called defendant as a witness and she testified Rhoderick had a living wife at the time of the purported marriage. This is undisputed.

In Carpenter v. Smith, 24 Iowa 200, a man joined his wife in an action for damages as the result of an assault on her. She later obtained a divorce on the ground he had a lawful wife living at the time of her marriage with him. At pages 202, 203, this court said: "The fact that S. R. Carpenter had a lawful wife living rendered the marriage with Susan A. Carpenter void ab initio. He acquired no rights thereby; she lost none. The marriage in no way affected her positive or relative rights, for, in truth, it was, in law, no marriage, the man and woman being incapable of entering into the marriage relation with each other. He acquired no right to her property, and she none to his, by virtue of the marriage, and they stood in the same relation to each other as though it had never taken place. It is void ab initio as to her; because she was induced to consent thereto by a wicked fraud, which, on his part, was a felony."

In Drummond v. Irish, 52 Iowa 41, 2 N.W. 622, a widow's attempt to recover certain property from the administrator of her late husband's estate was met with a claim she was married to one Eaton prior to her marriage to the decedent. She in turn established her purported marriage to Eaton was void as he had a living wife at the time. At pages 42, 43, 52 Iowa, page 623, 2 N.W., we said:

"Section 2201 of the Code provides that 'marriages between persons whose marriage is prohibited by law, or who have a husband or wife living are void. * * *.' The marriage of the plaintiff with Eaton was, therefore, void, and neither of them acquired any rights thereby and the plaintiff lost no right. Being void it was the same as though no marriage had ever taken place. * * *

"It is contended by counsel for defendant 'that the first and illegal marriage must be judicially annulled before civil rights can be acquired, or civil remedies demanded by reason of a sub-

sequent legal marriage.' This position would doubtless be correct if the marriage were merely voidable, but it can have no application to that which the law declares to be a void marriage. The fact that the Code contains provisions for annulling marriages of this character and judicially determining the status of the parties, cannot be regarded as changing the rule which has always obtained that a void marriage is no marriage."

In Sutton v. Leib, 7 Cir., 199 F.2d 163, 33 A. L. R.2d 1451, plaintiff had obtained a divorce in 1939 in Illinois. The decree required $125 monthly alimony "for so long as plaintiff remains unmarried." The divorced wife married one Henzel in Nevada in 1944. This marriage was annulled in New York in 1947 because Henzel had another wife living at the time of his marriage to plaintiff. She sued for the forty alimony installments due from the time of her second marriage until her third in 1947. The court held for plaintiff. Defendant argued recovery would allow her double support. The court said: "We think there can be no double support when there is no legal obligation of support, and the temporary interlude when plaintiff was receiving some gratuitous support from another man who was under no legal duty to support her does not of itself prevent her from recovering the alimony provided by the divorce decree. This is in accord with Illinois decisions which have consistently held that a void marriage, as distinguished from a voidable one, is an absolute nullity for all purposes, and no judicial proceedings or decree are required to establish its invalidity. People v. Shaw, 259 Ill. 544, 102 N.E. 1031, L. R. A. 1915E, 87; Cartwright v. McGown, 121 Ill. 388, 12 N.E. 737; Jardine v. Jardine, 291 Ill. App. 152, 9 N.E.2d 645. It follows that such a void marriage would be ineffectual to alter the marital status of either party to it, and that one who participated in it, if otherwise unmarried, would 'remain unmarried'." Loc. cit., pages 164, 165, 199 F.2d.

Husted v. Husted, 222 Cal. App.2d 50, 35 Cal. Rptr. 698, where a voidable marriage was involved, cites Sutton v. Leib, supra, and points out a void marriage does not affect the right to alimony upon divorce from a previous marriage.

In Minder v. Minder, 83 N. J. Super. 159, 199 A.2d 69, the court holds marriage by one mentally incapable of consenting

thereto is void ab initio and that the New Jersey statute terminating alimony upon remarriage of a divorced wife is not applicable to a subsequent void marriage.

In Shamblin v. State Compensation Com'r., 122 W. Va. 652, 12 S.E.2d 527, a widow with a compensation allowance of $30 per month until death or her remarriage did marry but two days later learned the man was already married. She obtained an annulment. The court held her void marriage did not terminate her compensation allowance. The court in Sparks v. United States, 153 F. Supp. 909, 912, in considering whether a void marriage cut off social security payments, said "* * * for purposes of the Social Security Act, 'remarry' means to enter into a valid marriage contract." The North Dakota court in First National Bank v. North Dakota Workmen's Comp. Bur., 68 N.W.2d 661, ordered payment of all weekly compensation for an incompetent daughter of a workman killed in the course of his employment, although she had married and later the marriage was annulled. The court at page 665 said: "We follow the rule and hold that the decree of annulment made the marriage void ab initio. Edith Mae Charon is entitled to receive payment from the Workmen's Compensation Bureau as though no marriage ceremony ever took place."

In Johnson County National Bank and Trust Co. v. Bach, 189 Kan. 291, 369 P.2d 231, a husband and wife entered into a trust agreement providing for support of the wife subject to reduction upon her remarriage. She then obtained a divorce and married one Emerson but later obtained an annulment because Emerson had a prior valid marriage. Kansas has a statute similar to our Code section 595.19. The court stated the obvious purpose of the agreement was to provide support for Mrs. Bach to end upon her remarriage; the agreement contemplated remarriage would provide another source of support for her; this could only be accomplished by a valid second marriage giving rise to a marriage status; she was entitled to support under the terms of the agreement from the date of entering into the void marriage.

We believe these authorities establish the majority rule to which we refer. See also Divorce and Annulment, Nelson, Sec-

ond Ed., Revised, Volume 2, section 16.35, page 465; 48 A. L. R. 2d 270, 296.

Sleicher v. Sleicher, 251 N. Y. 366, 368, 167 N.E. 501, 502, holds that where a separation agreement for alimony was "to continue so long as she remains unmarried" and was made a part of the divorce decree the wife's subsequent marriage to a mentally incompetent which was subsequently annulled did not relieve the husband from alimony payments after the annulment under the separation agreement. The court pointed out the second marriage was void ab initio. Following enactment of a statute permitting alimony following annulment the New York court held to the contrary in Gaines v. Jacobsen, 308 N. Y. 218, 225, 124 N.E.2d 290, 48 A. L. R.2d 312.

Plaintiff-appellee, as did the trial court, relies strongly on the Gaines case. There a separation agreement required alimony payments to plaintiff "until she shall remarry". Later plaintiff married one Harragan but the marriage was declared a nullity because of his prior existing marriage. At pages 294, 295, of 124 N.E.2d, the court states: "By writing section 1140-a into the law, the legislature has chosen, without regard to whether the marriage is void or voidable, to attach to annulled marriages sufficient validity and significance to support an award of alimony, in other words, to serve, the same as any valid marriage would as the foundation of a continuing duty to support the wife after the marriage is terminated. See Johnson v. Johnson, 295 N. Y. 477, 68 N.E.2d 499. It has declared, in effect, that, for the purpose of sustaining a right to support after annulment, the annulled marriage is no longer to be deemed a nullity, 'effaced as if it had never been'. In so doing, the legislature has destroyed the very foundation of the Sleicher decision. To give an annulled marriage this effect, and yet stamp it a nullity for the purpose of terminating the first husband's duty of support under the agreement, would fly in the face of logic and consistence." Based primarily on the statute the court held the divorced wife was not entitled to the alimony payments under the separation agreement.

We do not have such a statute. Plaintiff-appellee argues Code section 598.24 has the same effect. It provides when a mar-

riage is declared a nullity, such fact shall be entered in the decree, and the court may decree such innocent party compensation as in cases of divorce. Plaintiff's position is not tenable. This section cannot be said to give some effect to a marriage which is declared void by Code section 595.19. Compensation is not the same as maintenance as used in section 598.14. We do not believe compensation as used in section 598.24 can be construed to mean alimony. It is compensation for a fraud perpetrated on an innocent party. Our statute gives no validity to a void marriage.

We find no merit in plaintiff-appellee's argument the language employed in the stipulation of settlement clearly shows the intent of the parties and of the court in the divorce decree that any marriage would automatically terminate the obligation to pay any further alimony. We are convinced the evident intention of the parties and the court was that a change of status would be required. Appellant-defendant's status was not changed by the void marriage to Rhoderick. A void marriage is no marriage under our statute.

We hold defendant-appellant is entitled to the monthly alimony payments due after April 2, 1964.

This case is reversed and remanded for decree in conformity with this opinion.—Reversed and remanded.

All JUSTICES concur except JUSTICE RAWLINGS who takes no part.