No. 21262.

MURIEL J. TORGAN *v.* HAROLD D. TORGAN
(410 P.2d 167)

Decided January 24, 1966.

James D. Doyle, Samuel J. Eaton, for plaintiff in error.

Charles D. Bromley, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE SCHAUER.

THE parties appear here in the same order as their appearance in the trial court and will be referred to as they there appeared, as plaintiff or defendant, or by name.

This writ of error is directed to a decree of the trial court dated February 3, 1964, based upon findings of fact and conclusions of law relative to a petition of plaintiff for increased support for the two minor children of the parties, and for alimony. The issues were formed by a motion to dismiss the petition, in which the defendant had raised four defenses. The court, in the order referred to, relieved defendant from further payments of alimony to plaintiff, provided for payments by defendant to each of his minor children for their support and education, and dispensed with the filing of a motion for new trial or for the modification of the decree.

The facts essential to the determination of the issues raised are as follows:

Plaintiff and defendant were married on October 9, 1941. Two children were born as the issue of the marriage, to wit, John Arthur Torgan and Suzanne I. Torgan, aged eighteen years and sixteen years respectively at the time of the decree referred to.

On July 7, 1949, plaintiff filed a complaint in divorce on the grounds of cruelty, praying for a decree of divorce, the custody of the minor children, with reasonable rights of visitation on the part of defendant, support money for the minor children and alimony for plaintiff, the division of property, attorney fees and costs. On the same date, plaintiff filed a petition for temporary alimony, support money for the children and attorney fees. At a hearing on the same date the court found that both parties had no immediate financial need, but required defendant to pay the sum of $175 for the support of the children pending a later hearing.

Defendant answered the complaint, denying the charge

of cruelty, denying that plaintiff was a proper person to have the care, custody and control of the children, and denying his ability to pay support money, alimony and attorney fees. As a cross-complaint, he alleged cruelty on the part of plaintiff, and prayed for a decree of divorce, the care, custody and control of the children, with rights of visitation to plaintiff and a division of property. Plaintiff answered the cross-complaint, denying any acts of cruelty on her part.

It is imperative, to a full understanding of the issues now before this court, to set forth in considerable detail the chronology of the protracted litigation involving numerous court hearings and orders. On October 25, 1949, there was a hearing on plaintiff's petition for temporary alimony, etc., filed on July 7, 1949. No alimony was awarded nor specifically denied the plaintiff, the court having theretofore found that plaintiff had no present financial need. The court ordered that defendant pay $160 per month for the support of the children until further order and also pay accumulated taxes and bills incurred by the parties.

On April 23, 1951, an interlocutory decree of divorce was granted plaintiff, continuing in effect the former temporary orders for support money and alimony, and awarding the care, custody and control of the children to plaintiff, subject to reasonable visitation rights by defendant. A final decree of divorce was entered on October 24, 1951, adopting the terms and conditions of the interlocutory decree.

As a result of a hearing on April 29, 1953, the court, on May 1, 1953, entered an order determining the property rights of the parties. This order made provision for distribution of the respective interests in the family home, a cabin, two automobiles, payment of taxes, beneficiaries in insurance policies and the payment of premiums thereon, certain interests in stock certificates, and also provided for payment to plaintiff the sum of $160 per month "as alimony for plaintiff and as support

of the parties' two minor children." The same order awarded custody of the children to the plaintiff, provided for visitation rights of defendant, and ordered each party to pay respective attorney fees and costs. This comprehensive order embraced the provisions of a stipulation previously agreed upon by the parties. The court stated:

"In consideration of the 'Stipulation heretofore entered into in Court as aforesaid and its approval by the Court as herein set forth, it is understood that said stipulation and this Order shall operate as a full and complete adjustment and final settlement of all property and property rights by and between the above parties, including any rights which the Plaintiff may have for widow's allowance, rights of inheritance and any and all claims and demands of whatsoever kind and nature which each party may have against the other as to their respective property and interests."

No motion for modification of this order was filed, nor was any action taken to bring the matter or any previous orders before this court.

On April 10, 1959, almost six years subsequent to the order dated May 1, 1953, plaintiff filed her petition for an order requiring defendant to pay to plaintiff the sum of $400 per month "for alimony and support for the parties' two minor children until further Order of this Court." After an extensive hearing an order was filed on June 24, 1959, the court holding, *inter alia,* that no alimony was awarded to plaintiff since she had sufficient means to support herself. A motion for a new trial was filed July 6, 1959, asking in the alternative that the court take further testimony or make new findings reducing the child support payments. On July 31, 1959, the court, referring to the June 24 hearing, found that it was for the best interest of the children to remain in the care, custody and control of plaintiff; that defendant was financially able to increase the payments for their

support and that no alimony is awarded plaintiff since she has sufficient means to support herself. The court granted defendant visitation rights for specific periods of time and required defendant to pay plaintiff, beginning July 1, 1959, and until further order, the sum of $150 per month for the support of each child. Plaintiff filed a motion for a new trial, which was denied.

On August 5, 1963, plaintiff filed a "Petition for Increased Support," alleging that the necessary expenses for the care and maintenance of the children and the general expenses of living and education had increased, both children being then in high school. She also stated that her own resources were nearly exhausted and a reasonable amount necessary to maintain herself and the children was $850 per month. She asked for an increase to that amount (which sum included alimony for herself).

On October 24, 1963, defendant filed a motion to dismiss the proceedings, his main arguments being as follows: That the allegations contained in plaintiff's petition have been finally adjudicated against petitioner and therefor the matter is *res adjudicata;* that plaintiff remarried subsequent to the divorce of the parties herein, foreclosing her right to alimony from the defendant, notwithstanding the subsequent marriage was annulled; that plaintiff and her mother have prejudiced the children against their father, affecting his visitation rights; that plaintiff is able to engage in gainful occupation to support herself but has elected not to do so; that defendant is willing and able to provide a college education for his children and offers to pay expenses incident thereto in any appropriate educational institution in the state of Colorado, and plaintiff is estopped from seeking alimony from the defendant.

On February 5, 1964, the court entered its findings of fact, conclusions of law and decree to which the instant writ of error is directed. The court set forth

in considerable detail the matters raised by the defendant in his motion to dismiss, as above summarized.

The court's findings of fact, in addition to reviewing the prior proceedings, were in pertinent part as follows: That the interlocutory decree and final decree in divorce made no refrence to alimony or support; that plaintiff and Max E. Allen were married on February 27, 1957, the plaintiff notifying the defendant of the marriage by telegram and a subsequent letter, which marriage was annulled by the Superior Court of California on May 7, 1957, as being void; that on the first day of May, 1963, the first of three trial judges heard matters pertaining to alimony, support, property rights, custody and visitation rights, entering an order in regard to all issues then before the court, and specifying, *inter alia*, "the defendant to pay to the plaintiff the sum of $160 per month as alimony for the plaintiff and for the support of the parties' two minor children"; that the issue of increased support and alimony was heard by a second trial judge on July 31, 1959, who entered an order in regard to the custody and visitation rights of the children, denied plaintiff alimony, and increased the support for the two minor children to the amount of $150 per month for each child (a motion for a new trial to the latter order was filed and denied); that plaintiff, under cross-examination, testified as to her employment experience subsequent to the divorce of the parties and her last earnings in 1958 in the amount of $400 per month; that the two minor children testified concerning their lack of affection for their father, denying that this attitude was influenced by their mother; that the son was undecided concerning his future, considering entering the military service and further training at Southern Colorado College at Pueblo. The daughter testified as to her eligibility for a Colorado scholarship in the amount of $1,000, expressed her unwillingness to attend a Colorado institution and, in effect, specifically requested the right to

attend institutions of her choosing on either the East or, West Coast, at the expense of her father.

The court made the following conclusions of law:

"1. The undisputed testimony presented at the trial is to the effect that the plaintiff is able to work and is qualified for secretarial positions, carrying a salary of at least $300 per month, but that she chooses not to become so employed and that under such circumstances it may well not be the duty of the defendant to pay her alimony.

"2. That in the last prior hearing, alimony was denied to the plaintiff and that a serious legal question exists as to whether under such circumstances and Colorado statutes the Court retains jurisdiction to restore alimony.

"3. The Court finds it unnecessary to pass on the two above legal questions and that it is also unnecessary to determine whether or not the plaintiff's petition adequately alleges a change of circumstances insofar as her right to alimony, if any, is concerned.

"4. That as a matter of law, the subsequent marriage of the plaintiff although later annulled in a default proceeding, bars her right to alimony subsequent to the date of said marriage, which was February 27, 1957. In this connection the Court determines that the statutes of this state denied such right to restoration of alimony, whether or not the subsequent marriage was valid, void or voidable. It is the determination of this Court with respect to this situation that the law is the same since 1958 as it was prior thereto and that the public policy of the state precludes the plaintiff from at this date petitioning for a restoration of alimony."

The decree in issue now before this court provides, in pertinent part, as follows: That the defendant is relieved from further payment of alimony to the plaintiff and is entitled to reasonable rights of visitation with the two children. It further provides that defendant is financially able to support and educate the two children, and that he shall pay to the plaintiff the sum of $150 per month for each child so long as each attends

school or reaches the age of twenty-one years. Each child is required to make quarterly reports to the defendant concerning the expenditure of the support money. The trial court declined to determine what school the children shall attend but limited the defendant's obligation consistent with other requirements in the order.

It is now readily apparent from the above chronology that this case has a long history in court, commencing in 1951, and that the issue of support comes into sharp focus as a result of the needs and desires for higher education of the children. The latter issue, together with the court's elimination of further alimony payments, accounts for the acrimony and current bitter discord between the parties to this litigation.

A careful reading of the entire record fails to reveal any contradiction whatsoever of the defendant's testimony indicating his willingness to support the two children and also to finance their higher education. The offer concerning the latter issue has become a matter of controversy mainly because of the minor daughter's insistence upon her right to select the educational institution on either the East or West Coast. The daughter's wishes would require substantially higher costs than would be required if the father's suggested institutions of higher learning in the state of Colorado were attended.

The defendant's offer regarding higher education for the children apparently appealed to the judgment and reason of the able trial judge who heard the evidence and observed the witnesses and parties. After the hearing the trial judge entered his decree, as indicated hereinabove, which gives rise to the writ of error now before this court. We can find no fault with the trial judge's conclusions and decree which properly protects the interests of all parties concerned. It would serve no good purpose now to review in detail the testimony given during the years this case has been before

the court. All material evidence has been reviewed in the findings, conclusions and final decree.

As indicated in the decree, the court based its judgment upon a conclusion of law concerning the marriage of the plaintiff to another subsequent to the divorce of these two parties. It was the conclusion that the remarriage extinguished the right of the plaintiff to receive further alimony, notwithstanding the fact that this marriage was subsequently annulled. The cases cited in the briefs support this conclusion of law made by the trial court.

Several seasoned judges with wide experience in the field of domestic relations heard the issues raised between the two litigants. The following quotation is particularly applicable, both to the judges' contributions to the record as well as to the presiding judge who signed the final decree. In the case of *Nunemacher v. Nunemacher,* 132 Colo. 300, 287 P.2d 663, it is stated:

"* * * The instant case was tried by a seasoned judge with wide and varied experience in the field of domestic relations. The record discloses nothing which indicates, even remotely, an abuse of the judicial discretion vested in the trier of facts. He patiently heard all the evidence submitted by the parties, observed the witnesses, considered the testimony, the exhibits and affidavits offered, and after mature deliberation made his order and decree.

"* * * We do not * * * regard the conclusions of the trial court, based upon the evidence, as an abuse of discretion."

The judgment is affirmed.

MR. JUSTICE DAY and MR. JUSTICE FRANTZ concur.