LUCY R. SURABIAN *vs.* EDWARD SURABIAN.

Middlesex.   March 8, 1972. — July 18, 1972.

Present: TAURO, C.J., SPIEGEL, REARDON, & HENNESSEY, JJ.

*Divorce,* Separation agreement, Alimony, Modification of decree. *Contract,* Separation agreement.

A separation agreement, entered into by husband and wife through trustees, fully disposing of all jointly held property and adjusting rights and obligations and providing for court proceedings for

specific performance thereof, and stating that "if the wife re-
marries" the weekly sum which the husband agreed to pay "as
alimony for her sole support and maintenance" should "forthwith
cease and terminate" and that the husband would be "under no
further obligation" for support indicated an intent that the
agreement should not be superseded by the subsequent decree of
divorce, although the agreement did not so specify, and the wife,
upon remarrying, relinquished her right of support under the
agreement. [345–346]

Upon a petition by the libellee in a divorce proceeding, a decree of
the Probate Court rightly revoked as of the date of remarriage
of the libellant so much of the divorce decree as related to the
payment of weekly alimony to her by the libellee, notwithstanding
annullment of the remarriage by decree of the court, where the
divorce decree incorporated by reference and without modification
a separation agreement stating that if the libellant "remarries"
the alimony should "forthwith cease and terminate" and that the
libellee would be "under no further obligation" for support. [346–
348]

PETITION filed in the Probate Court for the county of
Middlesex on November 5, 1969.

The case was heard by *Martin,* J.

*Frank J. Santangelo* for the libellee.

*Marcus E. Cohn* for the libellant.

TAURO, C.J. The parties were married on March 12,
1933. The appellant Lucy R. Surabian, hereinafter re-
ferred to as the libellant, filed a libel for divorce [1] on Sep-
tember 24, 1963, in the Middlesex Probate Court. A de-
cree nisi was entered on January 29, 1964, granting a
divorce and incorporating by reference the terms of a
separation agreement by the parties.

Under the agreement,[2] the libellee agreed to pay to the
libellant "the sum of forty ($40.00) dollars per week as
alimony for her sole support and maintenance, provided,
however, that if the wife remarries such support and

---

[1] The libel for divorce indicates that two children were born of this
marriage. Both had attained majority before the decree nisi was
entered and no provisions as to their support or custody were re-
quested of or made by the Probate Court.

[2] Although St. 1963, c. 765, § 1, permitting married women to
make contracts with their husbands was approved on October 22,
1963, the parties apparently effected a division of their property and
their respective rights prior to the effective date of the new statute,
and used a trustee agreement in order to accomplish their purposes.
The agreement bears no specific date, just January, 1964.

maintenance shall forthwith cease and terminate and the husband [libellee] will be under no further obligation to pay any moneys for the support of the said wife." The agreement, in addition, fully disposed of all jointly held property and adjusted all rights and obligations between the parties.

On December 30, 1968, the libellant married one Jule Sheftel in Denver, Colorado, and thereafter the libellee ceased making support payments. Subsequently, on August 12, 1969, the Colorado marriage was annulled, without contest, by a decree of the Norfolk Probate Court. By a letter dated August 27, 1969, counsel for the libellant informed the libellee that he should resume making support payments pursuant to the 1964 divorce decree. The libellee refused, and on October 10, 1969, the libellant filed in the Middlesex Probate Court a petition to hold the libellee in contempt for failure to make alimony payments since December 30, 1968 (the date of the remarriage).

While the contempt petition was pending,[3] on November 5, 1969, the libellee filed a "general petition for modification of [the divorce] decree." The petition alleged that the marriage of the libellant to Jule Sheftel terminated the libellee's alimony obligation, and it prayed that the decree "be modified by deleting any reference to alimony." After a hearing, the Middlesex Probate Court on March 25, 1971, "decreed that so much of said decree dated January 29, 1964, as relates to the payment of alimony be and the same hereby is revoked as of the date of remarriage of said libellant, and except as herein modified said decree be affirmed." From this decree, the libellant has appealed.

The case is before us with a report of the evidence. No findings of fact were made by the judge. "It is our duty to examine the evidence and to decide the case upon our own judgment, not only as to questions of law but also as to questions of fact. . . . [The findings of the judge]

---

[3] An order dismissing the contempt petition was made on February 3, 1970, by the Middlesex Probate Court. No appeal was claimed.

necessarily implied from the entry of the decree will not be reversed unless they are plainly wrong. *Durfee* v. *Durfee*, 293 Mass. 472. *Berry* v. *Kyes*, 304 Mass. 56." *Levanosky* v. *Levanosky*, 311 Mass. 638, 639.

1. At the outset it is necessary to determine the status of the separation agreement.

Agreements made while parties are separated may provide for the agreement's termination or continuation after a decree nisi is entered. See *Schillander* v. *Schillander*, 307 Mass. 96; *Fabrizio* v. *Fabrizio*, 316 Mass. 343. Compare *Welch* v. *Chapman*, 296 Mass. 487. The separation agreement here does not specify whether it is to remain in force. The mere fact that the provisions of the agreement were incorporated in the divorce decree does not mean that the agreement terminated upon entry of the decree. "[I]t is not lightly to be presumed that a decree, ephemeral in that it could be revised downward at any time, was accepted by a wife as a substitute for an existing agreement." *Metcalf* v. *Commissioner of Int. Rev.* 271 F. 2d 288, 292 (1st Cir.), cited approvingly in *Hills* v. *Shearer*, 355 Mass. 405, 408–409. "[T]he question is one of intent, which is to be ascertained by a reading of the . . . [parties'] agreement [in its entirety]." *Id.* at 408. See *Freeman* v. *Sieve*, 323 Mass. 652, 656.

The agreement in the instant case provides, in addition to support, for a division of all properties and for an adjustment of all rights and obligations. A natural reading of the agreement, including the provisions for other court proceedings for specific performance, indicates an intent that the agreement not be superseded by the decree. See *Welch* v. *Chapman, supra,* at 488; *Freeman* v. *Sieve, supra,* at 656; *Hills* v. *Shearer, supra,* at 408.[4]

---

[4] As in the instant case, the question of survival arose because of the incorporation by reference of separation agreements. In the cited cases, even though the agreements contained covenants that the parties would seek such incorporation, we held in each instance, on the basis of a reading of the entire agreement, that the parties intended the agreement to survive entry of any subsequent divorce decree. Pertinent here is the reasoning of *Freeman* v. *Sieve*, 323 Mass. 652, 656:

Because the separation agreement exists independently of the divorce decree, the libellant could seek to have the support provision enforced in a contract action. Under our decision in *Gerrig* v. *Sneirson,* 344 Mass. 518, 520–521, however, she would not prevail. In the *Gerrig* case, this court said that, where a separation agreement provides that the husband shall make support payments "until the remarriage of the wife," the parties will be held to have contemplated termination of payments upon the ceremony of marriage, unless it clearly appears that their intent was otherwise. The husband's support obligation ceases effective upon remarriage and does not revive if the remarriage is later annulled. See also *Glazer* v. *Silverman,* 354 Mass. 177, 178–179; *Gaines* v. *Jacobsen,* 308 N. Y. 218, 223–224; annotation, 48 A. L. R. 2d 318, 329–332. Cf. *Price* v. *Price,* 24 Cal. App. 2d 462, 464–467.

In these circumstances, it is clear that, by remarrying, the libellant relinquished her right of support under the separation agreement. She seeks to escape the consequences of the contract which she freely entered into by proceeding under the divorce decree rather than by suing under the separation agreement.

2. The issue posed is whether the libellant is entitled to alimony under the divorce decree despite the termination provision incorporated by reference from the separation agreement.

Under our alimony statute, a decree providing for support payments does not rest upon the agreement of the parties, although of course their agreement may be considered by the judge as evidence to aid him in the determination of a proper allowance for the wife.[5] G. L. c. 208,

---

"In view of the advantages of the matter of enforcement, there are good reasons why a party to an agreement of this sort might want the added protection of a decree." It follows that, as a general rule, unless the parties expressly provide otherwise, their separation agreement will be held to survive a subsequent divorce decree incorporating by reference the terms of the agreement.

[5] Whenever a judge incorporates a provision from a separation agreement in a divorce decree, it is reasonable to conclude that he gave due

§§ 34–37. See *Parker* v. *Parker*, 211 Mass. 139, 141–143, for a review of earlier alimony statutes. "Husband and wife cannot by contract deprive the Probate Court . . . of power to consider their relation in connection with their contract and all other facts material to the issues properly before it in providing for the maintenance of wife . . . ." *Wilson* v. *Caswell*, 272 Mass. 297, 302. See *Smith* v. *Smith*, 358 Mass. 551, 553. Thus, in determining the effect of the termination provision in the instant case, it is the court's intention which must be ascertained. See *Farrington* v. *Boston Safe Deposit & Trust Co.* 280 Mass. 121, 127; *Taylor* v. *Gowetz*, 339 Mass. 294, 298.

Since our decision in *Gerrig* v. *Sneirson*, 344 Mass. 518, had been rendered at the time the divorce decree was entered, the judge entering the decree was chargeable with knowledge of the construction given there to the word "remarriage." The judge in his decree could have, but did not, modify in any way the word "remarries" in the clause providing for the termination of alimony upon remarriage. The decree, therefore, requires the conclusion that he intended that all matrimonial ties between the parties would be totally dissolved upon the libellant's going through the ceremony of marriage with another man. The case of *Robbins* v. *Robbins*, 343 Mass. 247, decided some months before the *Gerrig* case, is of no assistance to the libellant since the decree there was silent on the effect of remarriage. Nor had the parties in the

---

consideration to all of the provisions of the agreement and to all of the circumstances surrounding its making. He may, for example, treat a large property settlement in favor of the wife as a substitute, in whole or in part, for alimony, or, conversely, he may order larger than usual alimony payments where there is no transfer of property, provided that, in either case, he is satisfied as to the essential fairness of agreement and that it was arrived at without fraud or other unconscionable circumstances. If a provision for support is fair only in the context of the entire agreement, the judge may incorporate the entirety, including provisions adjusting the parties' property holdings which otherwise would not appear in a divorce decree. In the instant case, the judge who entered the divorce decree undoubtedly considered the fact that the parties had totally adjusted their rights and obligations, and for this reason, he incorporated their separation agreement in full in the decree.

*Robbins* case provided in a separation agreement for the termination of alimony.[6]

There is no doubt a judge of the Probate Court may enter a divorce decree such as the one involved in the instant case. The power of the Probate Court over alimony is extremely broad under our alimony statute. G. L. c. 208, §§ 34–37.

It is well settled that the court's power permits revocation of decrees and also their revision from time to time. See G. L. c. 208, § 37. See also *Brown* v. *Brown,* 222 Mass. 415, 417; *Perkins* v. *Perkins,* 225 Mass. 392, 397; *Kerr* v. *Kerr,* 236 Mass. 353, 356; *Watts* v. *Watts,* 314 Mass. 129, 133; *Whitney* v. *Whitney,* 325 Mass. 28, 31. The Probate Court may order alimony paid in a gross sum or in instalments. *Burrows* v. *Purple,* 107 Mass. 428, 432. *Brown* v. *Brown, supra. Weidman* v. *Weidman,* 274 Mass. 118. *Baird* v. *Baird,* 311 Mass. 329, 333. *Klar* v. *Klar,* 322 Mass. 59, 60. *Kahn* v. *Kahn,* 353 Mass. 771. Specific property may be ordered transferred as payment of alimony. See *Topor* v. *Topor,* 287 Mass. 473; *Klar* v. *Klar, supra.* Further, a decree may require that alimony extend beyond the lifetime of the party ordered to make payments. See *Southard* v. *Southard,* 262 Mass. 278, 280–281; *Farrington* v. *Boston Safe Deposit & Trust Co.* 280 Mass. 121. See also *Taylor* v. *Gowetz,* 339 Mass. 294, 299 (where an agreement was so construed).

We are of opinion that the Probate Court may also order that support payments to the wife terminate upon her remarriage. In most instances, a self-terminating provision will be equitable to both husband and wife.[7]

---

[6] Regardless of such an agreement by the parties, the Probate Court of course may, on its own, provide that alimony terminate upon remarriage, whether valid or not. See this opinion, *infra.*

[7] In determining whether a self-terminating provision is equitable in a particular case, the Probate Court may appropriately take into account the enhanced ability and desire of women today to look after their own affairs and to provide for their own economic well-being. Because of the unequal status of women in the past, there was good reason for the traditional protective posture of our courts toward women. In the past decade, however, there have been important changes in both popular and legal thinking which suggest that "ancient canards about the proper role of women" have no place in

But in any event, a right of appeal lies from such a decree, G. L. c. 215, §§ 9–29.

3. We need not decide in the instant case whether a self-terminating feature in a decree precludes its subsequent modification after the feature has taken effect.[8] Although the judge below held a hearing on the libellee's petition for modification, the decree merely gave effect to the self-terminating feature.

There was no error.

*Decree affirmed.*

---

the law (Marshall, J., concurring in *Phillips* v. *Martin Marietta Corp.* 400 U. S. 542, 544–545). See St. 1963, c. 765, §§ 1, 2, amending G. L. c. 209, §§ 2, 6; St. 1971, c. 423, § 14, amending G. L. c. 209, § 1; 42 U. S. C. §§ 2000e-2, 2000e-3 (1970). See also *Phillips* v. *Martin Marietta Corp.* 400 U. S. 542; *Reed* v. *Reed*, 404 U. S. 71; Douglas, J., concurring in *Alexander* v. *Louisiana*, 405 U. S. 625, 639–641. It is not necessary in the instant case to explore to a greater extent the implications of these changes with respect to divorce law, although these changes must have significance for the setting of both the amount and terms of alimony.

[8] Nor do we decide whether, even in the absence of a decree terminating alimony payments upon remarriage, the ceremony of marriage should terminate the wife's support payments. In view of the changes in the status of women, we may, if the occasion presents itself, be required to reconsider the rule of *Robbins* v. *Robbins*, 343 Mass. 247, even in cases where the intent of the parties and the court do not so clearly indicate. See *Denburg* v. *Frischman*, 24 App. Div. 2d (N. Y.) 100, affd. 17 N. Y. 2d 778, overruling *Sleicher* v. *Sleicher*, 251 N. Y. 366, which this court followed in the *Robbins* case, *supra*, at 251–252. See also The Changing Social Setting of Alimony Law, 6 Law and Contemporary Problems 186 (1939); Rheinstein, Trends in Marriage and Divorce Law of Western Countries, 18 Law and Contemporary Problems 3; Ploscowe, Alimony, 383 Annals 13 (May, 1969).