361 So.2d 582 (1978)
Pauline S. BROADUS
v.
Thomas A. BROADUS.
Civ. 1465.
Court of Civil Appeals of Alabama.
August 9, 1978.
*583 Herndon Inge, Jr., Mobile, for appellant.
M. A. Marsal, Mobile, for appellee.
BRADLEY, Judge.
The sole issue before us on this appeal is whether a woman's right to alimony from her former husband under an agreement incorporated into a divorce decree is revived by the annulment of the woman's second marriage. The Circuit Court of Mobile County held that appellant-Pauline S. Broadus's right to alimony was not revived and she then filed an appeal with this court.
The facts relevant to this appeal are not in dispute. Appellant and appellee-Thomas A. Broadus were married and had two children. When marital difficulties arose between the couple in the summer of 1975 a divorce proceeding was initiated by appellant. Pursuant to this action the parties entered into an agreement whereby appellee was to provide his wife (appellant) alimony in the sum of $320 a month until such time as she remarried. The parties were subsequently divorced in May of 1976 and the divorce decree incorporated the aforementioned agreement.
On October 29, 1976 appellant married a man named Clinton Mitchel. However, on January 27, 1977, appellant's marriage to Mitchel was annulled. The record does not disclose why appellant's second marriage was annulled. Nonetheless, in March of 1977 appellant filed a motion seeking to enforce appellee's obligation to provide alimony under the terms of the divorce decree. After the consideration of the briefs submitted on behalf of both parties, the Mobile County Circuit Court rendered a judgment in favor of appellee. The court concluded that the agreement and intent of the parties was that appellee's obligation to provide alimony would cease upon appellant's remarriage, and furthermore, that the subsequent annulment of appellant's second marriage was not the proper basis for the *584 reinstatement of appellee's duty to pay alimony.[1]
The question of what effect the annulment of a second marriage has upon an award of alimony resulting from a first marriage has not been decided by the appellate courts of this state. However, a number of other jurisdictions have considered and decided this question. 45 A.L.R.3d 1033 (1972). For instance, some states distinguish between void and voidable second marriages and held that only the latter operate to extinguish the right to alimony. Evans v. Evans, 212 So.2d 107 (Fla.App. 1968); Bridges v. Bridges, 217 So.2d 281 (Miss.1968); Dodd v. Dodd, 210 Kan. 50, 499 P.2d 518 (1972); Darling v. Darling, 44 Ohio App.2d 5, 335 N.E.2d 708 (1975). On the other hand, many jurisdictions do not make such a distinction and deny a wife's right to alimony even where her second marriage is void rather than merely voidable. Fry v. Fry, 5 Cal.App.3d 169, 85 Cal.Rptr. 126 (1970); Torgan v. Torgan, 159 Colo. 93, 410 P.2d 167 (1966); Keeney v. Keeney, 211 La. 585, 30 So.2d 549 (1947); Surabian v. Surabian, 362 Mass. 342, 285 N.E.2d 909 (1972); Denberg v. Frischman, 24 A.D.2d 100, 264 N.Y.S.2d 114 (1965). We feel compelled to adopt the former view which permits the reinstatement of the wife's right to alimony in those instances where the second marriage is deemed to be void rather than voidable.
Alabama courts may properly annul a marriage on the grounds that the marriage was void from its outset, or on the grounds that the marriage was subject to ratification and thus voidable if not ratified. Henley v. Foster, 220 Ala. 420, 125 So. 662 (1930). And a major difference between a void marriage and a voidable marriage is that the latter is treated as binding until its nullity is ascertained and declared by a competent court, whereas the former does not require such a judgment because the parties could not enter into a valid marital relationship. Flaxman v. Flaxman, 57 N.J. 458, 273 A.2d 567, 45 A.L.R.3d 1026 (1971). Accordingly, several reasons exist for denying the wife's claim for reinstatement of alimony in situations where the second marriage is voidable. The reasons were aptly stated in Flaxman v. Flaxman, supra and Evans v. Evans, supra. Among them were: (1) the first husband's right to rely on the second marriage as a valid remarriage entitling him to recommit any assets previously chargeable to alimony to other purposes; (2) the fact that only the wife and her second husband would ordinarily know whether there was cause for the annulment, thus creating a situation where the marriage might continue indefinitely and thereby cause the first husband's affairs to be subject to the conduct of parties involved in a relationship in which he has no part; (3) the possibility that the wife's divorce from her second husband could result in alimony from the second husband while an annulment could reinstate alimony from the first, thus permitting the wife to choose between two sources of support under circumstances where she should not be given such control in view of the fact that it was she who entered into the second marriage, and the subsequent vicissitudes of that marriage should not be attributable to her first husband; and (4) the potential for inequitable treatment to the first husband in that the wife's obtainment of an annulment instead of a divorce could vitally affect the rights of her first husband by causing his obligation to pay alimony to be reinstated as a matter of law in a proceeding at which he was not represented or able to challenge the validity of the grounds asserted in support of the annulment.
The above stated reasons are not present, however, where the second marriage is void at the outset. In the latter situation it is as if there was no marriage and the parties to the second union stand in *585 the same relation to each other as though the union had never taken place. For this reason, the status of the wife under the terms of the original divorce decree is not changed by the void marriage to the second husband and her right to receive alimony from her first husband is deemed to have been revived. DeWall v. Rhoderick, 258 Iowa 433, 138 N.W.2d 124 (1965).
In this jurisdiction a number of cases have held that it is the status of the marital relationship rather than the marriage ceremony which is of importance in cases involving petitions for annulment. Johnson v. Johnson, 245 Ala. 145, 16 So.2d 401 (1944); Hamlet v. Hamlet, 242 Ala. 70, 4 So.2d 901 (1941); Henley v. Foster, supra; Hawkins v. Hawkins, 142 Ala. 571, 38 So. 640 (1904). Accordingly, even if a marriage ceremony takes place, the marriage may nevertheless be declared void ab initio if the parties could not validly enter into the status of matrimony. See Hawkins v. Hawkins, supra.
Furthermore, we see no reason why this principle should not prevail in instances where the language employed in a stipulation of agreement contained in a divorce decree states that the wife's right to receive alimony shall cease upon her remarriage. In other words, the wife must legally enter into another marital status or relationship before she may be deemed to be remarried under the terms of the divorce decree. Thus, there is no merit to any contention that the marriage ceremony itself automatically terminates an obligation to pay further alimony in view of the fact that case law in this state requires a change in marital status. And, as stated earlier, a woman's marital status is not changed by a void marriage because a void marriage is in fact no marriage. DeWall v. Rhoderick, supra.
In the present case the record does not reveal the reason for the annulment of appellant's second marriage. Consequently, we reverse and remand for the circuit court to determine whether the appellant's marriage to Mitchel was void or voidable, and thereby render a judgment in accordance with this opinion.
REVERSED AND REMANDED.
WRIGHT, P. J., concurs.
HOLMES, J., dissents.
HOLMES, Judge (dissenting):
I respectfully dissent.
As the majority opinion states, this is a case of first impression. I believe the better view is that the divorce decree requires the conclusion that when the wife went through the ceremony of marriage with another man, her right to alimony ceased. Put another way, the wife remarried and the decree provided that alimony would cease upon remarriage. A subsequent annulment, whether based on a void or voidable marriage, does not reinstate the alimony. See Fry v. Fry, 5 Cal.App.3d 169, 85 Cal.Rptr. 126 (1970); Torgan v. Torgan, 159 Colo. 93, 410 P.2d 167 (1966); Keeney v. Keeney, 211 La. 585, 30 So.2d 549 (1947); Surabian v. Surabian, 362 Mass. 342, 285 N.E.2d 909 (1972); Denberg v. Frischman, 24 A.D.2d 100, 264 N.Y.S.2d 114 (1965).
The reasons, as stated in the majority opinion, for not reinstating alimony in situations where the second marriage is voidable appear to me to be just as applicable in a void second marriage situation. Furthermore, it would appear to me that the majority's reasoning would necessarily mean that in a void marriage situation, the wife would be entitled to the alimony not paid to her while she was "married."
I would affirm the trial court.
NOTES
[1] This case was initiated prior to the adoption of legislation requiring the termination of alimony payments upon proof that the spouse receiving such alimony has remarried or is living openly (or cohabiting) with a member of the opposite sex. Act No. 596, Acts of Alabama 1978.