CASE 66—ACTION BY LUCINDA COMSTOCK'S ADMR. AGAINST P. G. BAR-
LOW'S ADMR. FOR A SETTLEMENT OF HIS ESTATE.—FEB. 9.

# Barlow's Admr., &c. v. Comstock's Admr.

APPEAL FROM WASHINGTON CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS.    AFFIRMED.

HUSBAND AND WIFE—ANTENUPTIAL CONTRACT—CONSTRUCTION—CON-
SIDERATION—PERFORMANCE.

Held:    1. Where an antenuptial contract provided that, whereas a
marriage was about to take place between the parties, the pros-
pective husband agreed to give to his prospective wife $500,
to be paid at his death, for which payment he bound himself,
his administrators, etc., and that the wife bound herself to
make no claim to dower or other right in the husband's es-
tate, such contract was based not only on the wife's release of
dower, as a consideration, but on the prospective marriage, so
that the wife's death before the husband did not relieve his
administrator from liability to her personal representative for
the payment of the amount specified.

JOHN W. LEWIS, ATTORNEY FOR APPELLANTS.

CLASSIFICATION OF QUESTIONS DISCUSSED.

1. Parol evidence is inadmissible to vary the terms of a writ-
ten contract unless there is allegation of fraud or mistake.
Wright v. S. R. R. Co., 16 B. M., 6; Brothers v. Proctor, 6
B. M., 109; Hibbard v. Smith, 17 B. M., 54; Spurrier v. Parker,
16 B. M., 284; Castleman v. Southern Mutual Life Ins. Co.,
14 Bush, 197; Vansant v. Runyon, 19 Ky. Law Rep., 1981; Mun-
fords v. Green's Admr., 103 Ky. Law Rep., 140.

2. The rule of construction is the intention of the parties
and the intention with which they contracted.    Beach on Con-
tracts, vol. 2, sec. 1299, same sec. 1637.

3. The rule adopted in the construction of wills containing
provisions of like character with covenants of antenuptial con-
tract in question, may be applied analogously.    Lusby, &c. v.
Taylor, 17 Ky. Law Rep., 65; Hinklebein, &c. v. Totten's Admr.,

Barlow's Admr., &c. v. Comstock's Admr.

22 Law Rep., 1357, 1358; Powell's Admr v. Meyers, 23 Ky. Law Rep., 795.

I. H. THURMAN AND J. W. S. CLEMENTS, ATTORNEYS FOR APPELLEE.

We submit that the antenuptial contract under which the administrator of Lucinda Barlow's deceased husband, claims $500 of her deceased husband's estate, is a direct and unqualified covenant to pay her said sum of $500 on the death of the obligor, and is expressly binding on the personal representatives of P. G. Barlow, deceased. Every thing else in the writing is merely descriptive of the consideration. In effect, the paper merely says: "In consideration of the fact that Mrs. Comstock surrenders her prospective rights in my estate, I agree to pay her at my death, $500." The fact that she died first does not affect the contract. There is no contingency in it, and the fact that his death was named, and hers not, shows conclusively that the promise was absolute and in no way contingent on her survivorship.

Where the consideration is valid and has passed according to law from the one party to the other, the law will never construe a contract so as to deprive the party from whom the consideration has passed, of the thing for which it was given.

AUTHORITIES.

A. & E. Ency. of Law (New Ed.), vols. 19, 123, 1244; Williamson v. Yeager, 91 Ky., 282; Simpson v. Simpson, 94 Ky., 586; Mudd v. Mullican, 12 S. W., 263.

OPINION OF THE COURT BY CHIEF JUSTICE BURNAM—AFFIRMING.

On the —— of July, 1881, Peter G. Barlow and Lucinda Comstock executed the following antenuptial contract with each other.

"Whereas marriage is about to take place between Peter G. Barlow and Mrs. Lucinda Comstock, all of Washington county, State of Kentucky: This marriage contract between the parties whose names are hereunto subscribed, witnesseth: The said Peter G. Barlow agrees to give to said Mrs. Comstock five hundred dollars to be paid at his death, and to the

payment of the same hereby binds himself, his administrators, executors, heirs and assigns as stipulated. The said Lucinda Comstock agrees and binds herself to make no claim to dower or homestead or other distributable right, interest, or share in the real or personal property of said Barlow, and hereby releases, relinquishes, and waives all claim to dower, homestead, or to other distributable right or share in the property, real or personal, of said Barlow. Said Barlow agrees that said Mrs. Lucinda Comstock shall have the exclusive right to the° use and control and dispose of what personal effect she has, before, during or after the marriage, free from all claims of said Barlow, his heirs, administrators, executors and assigns. The said Barlow is to furnish a decent support during his natural life. Witness our hand this —— of July, 1881.

"Peter G. Barlow.

her

"Lucinda  X  Comstock.

mark.

"Attest: Palmer Grundy, Isaac L. Janes."

Shortly after the execution of this written agreement, the marriage between the parties was legally solemnized, and the parties lived together as husband and wife until the death of Mrs. Barlow, on the —— day of ——. Peter Barlow survived his wife, and died intestate on the 19th of April, 1900; leaving surviving him, as heirs at law, a number of children by a previous marriage. Suit was instituted in the Washington circuit court for a settlement of his estate, and W. T. Comstock, as administrator of the estate of Lucinda Barlow, was made a party defendant. He filed his answer, which he made a cross petition against the administrator and heirs of Peter G. Barlow, setting up the antenuptial contract of July, 1881, and prayed judgment

against the administrator for $500, with interest. The administrator of Peter G. Barlow filed a general demurrer to the answer and cross petition of Mrs. Barlow, which was overruled, and, declining to plead further, judgment was awarded to appellee for $500, with interest from the 1st day of June, 1900, until paid; and the administrator of Peter G. Barlow has appealed, and insists that the sole consideration for the payment of the $500 provided for in the antenuptial contract between the parties was the release by Mrs. Comstock of all claim to dower, homestead, or other distributable right in the estate of her prospective husband in the event she should survive him. Or, in other words, that it was a stipulated sum to be paid to her in lieu of all rights which she might have, growing out of the marriage, in her prospective husband's estate, as surviving widow, and that, as she died several years prior to her husband, she never became invested with any estate of the character sought to be released, and in consequence the written obligation sued on was not enforceable. We can not concur in this contention.

There were two considerations which entered into the execution of the antenuptial contract by Mrs. Comstock—one, the prospective marriage, which was alone an adequate consideration therefor; the other the release of all claim by her of her inchoate rights as surviving widow. The obligation assumed by Peter Barlow in the contract of July, 1881, to pay Mrs. Comstock $500 at his death, is unconditional. It contains no such qualification as appellant seeks to inject into it. Nothing is said about her death, or that the contract sued on was to be enforceable only in case she survived her prospective husband, and, we think, is in no wise dependent upon such a contingency. In an

unbroken line, the authorities favor a liberal construction of these contracts, for their purpose is to prevent strife, secure peace, and adjust and settle the question of marital rights in property.

For reasons indicated, the judgment is affirmed.