issues determinative of the controversy was tried and submitted free from error, and hence the two issue rule cannot save the judgment. *McCombs* v. *Landes,* 35 Ohio App., 164, 171 N. E., 862.

Inasmuch as this case may be retried, it seems fitting to say in view of the record that justification cannot be proven under a general denial. *Duval* v. *Davey,* 32 Ohio St., 604, 610.

Holding these views, it follows that the judgment of the court of common pleas should be reversed.

*Judgment reversed and cause remanded.*

CROW and KLINGER, JJ., concur.

RUDRICK *v.* THULL.

(Decided June 10, 1931.)

*Mr. A. B. Mabee* and *Mr. Charles J. Anderson,* for plaintiff in error.

*Mr. Lewis Brucker,* for defendant in error.

MONTGOMERY, J. Plaintiff in error, John Rudrick, administrator of the estate of Mary Mohler, who was the plaintiff below, filed his petition in the common pleas court of Richland county against the defendant in error, Eva K. Thull, administratrix of the estate of John Mohler, who was the defendant below. The petition recites the representative capacity of the plaintiff in error and defendant in error, and avers that the two decedents, during their lifetimes, and prior to their marriage, entered into an antenuptial contract, a copy of which is as follows:

"Marriage Contract.

"This Agreement made and concluded this sixth day of August, 1926, by and between John Mohler and Mary Rudrick, both of Mansfield, Ohio, Witnesseth:

"That whereas the parties hereto contemplate marriage with each other, and both parties have real estate and personal property, and each have minor children of a former marriage.

"Now, therefore, in consideration of said marriage and of the covenants of said parties herein contained, the said John Mohler has this day made and executed a deed of warranty for the undivided one-half of the east one-half of lot 3715 in the Syndicate Addition in the City of Mansfield, Ohio, to be delivered to the said Mary Rudrick on the consum-

mation of said marriage; and further agrees that the said Mary Rudrick shall be paid the sum of one thousand ($1000.00) in money on the death of said John Mohler, and in order to secure the same he, the said John Mohler, has this day assigned to the said Mary Rudrick an insurance policy of the sum of $1000.00, and should she be unable to collect on said policy, or for any reason it should be forfeited, then she is to be paid the said sum out of his estate, and for the consideration herein passing from John Mohler to Mary Rudrick she this day covenants and agrees to accept the same in lieu of dower, any year's allowance, any distributive share in the estate of John Mohler and for any and all rights and claims she may have or make as heir, widow, or distributee of his said estate.

"And whereas the said Mary Rudrick is possessed of real estate and the one-half of the residence property has this day been conveyed to her by the said John Mohler, she covenants and agrees that should she be survived by John Mohler, her husband, as contemplated by this contract, that the one-half of the property this day conveyed shall revert to the said John Mohler on his paying to her estate the sum of Fifteen Hundred Dollars, and she further covenants and agrees to make a will carrying out said agreement, but should she fail to do so, the said John Mohler paying all her burial debts and costs of last sickness and tendering to her administrator of her estate the sum of $1500.00, the recording of this contract and the evidence of such payment shall act as a conveyance of said property, and the said John Mohler shall not be entitled to any other property of her estate.

"And whereas both parties hereto have now existing debts, it is further mutually agreed that after the payment of their obligations, that whatever property shall be purchased in the future or during the existence of said marriage shall be held jointly and whatever savings and accumulations shall be acquired by said parties shall be held and possessed jointly, and each shall have the right to the one-half in addition to the other provisions of this contract.

"Both parties agree that should either sell any property in which they have no right, title or interest by virtue of this contract that they will sign any deed or contract perfecting title to any property so conveyed.

"This agreement shall not prevent the said John Mohler from at [any] time during said marriage adding to or making additional gifts to said Mary Rudrick, nor shall it prevent the said Mary Rudrick making gifts or other provisions for the said John Mohler either by will or otherwise.

"This agreement shall become effective only on the consummation of said proposed marriage between the parties hereto, and if such marriage does not take place then this agreement shall be null and void.

"Witness the hands of the parties hereto on the date above given.

"John Mohler,
"Mary Rudrick.

"Signed in the presence of:
  "Robert Martin,
  "W. J. Bissman."

The petition avers that Mary Rudrick fully per-

formed her part of the agreement, and that the marriage was consummated; that the two lived together as husband and wife until August 3, 1930, when, at the same time, both were killed.

The petition sets forth two causes of action:

First, that the defendant's decedent never assigned to plaintiff's decedent the insurance policy mentioned in the contract; that no part of the thousand dollars provided for in the said contract had been paid, either prior to the death of plaintiff's decedent, or thereafter; that claim upon same was duly presented to the defendant, and was by him rejected.

The second cause of action avers that the two decedents, during their married lives, accumulated personal property of the value of $1,200, which the defendant's decedent, in violation of his agreement, held and possessed as his own, and which the defendant converted into money since the death of her decedent, and it avers the presentation of the claim for the one-half of said property, or $600, and the rejection of the claim.

The defendant below filed a demurrer to the first cause of action, which demurrer was by the common pleas court sustained, and, the plaintiff not desiring to plead further, a judgment was rendered upon this cause of action and error prosecuted to this court.

So far as the record shows, the case is still pending in the common pleas court upon the second cause of action.

The petition in error seeks a reversal of the judgment of the court of common pleas in sustaining the demurrer to plaintiff's first cause of action.

In construing this contract, the first question nat-

urally arising is that of consideration. It will be noted that the contract recites that, "in consideration of said marriage and of the covenants of said parties herein contained," the parties to the contract agree to do certain things. There are mutual covenants running throughout this contract, which mutual covenants afford a consideration; but it is to be noted that by the terms of the contract the chief consideration in the minds of the parties obviously was the marriage.

That marriage is a good and sufficient consideration for a contract, and is, in fact, the highest consideration, is a principle well known in the law. Chancellor Kent, in the case of *Sterry* v. *Arden,* 1 Johns. Ch., (N. Y.), 261, 271, used the words "the highest consideration in law."

The Supreme Court of the United States, in the case of *Prewit* v. *Wilson,* 103 U. S., 22, 24, 26 L. Ed., 360, used this language: "Now, marriage is not only a valuable consideration, but, as Coke says, there is no other consideration so much respected in the law."

Mr. Justice Story, in the case of *Magniac* v. *Thomson,* 32 U. S. (7 Pet.), 348, 393, 8 L. Ed., 709, said that marriage "is a consideration of the highest value, and from motives of the soundest policy is upheld with a steady resolution."

The defendant in error concedes that there was sufficient consideration for the contract, but insists that, under a proper construction of the contract, it must be held that the obligation of the defendant's decedent to pay the thousand dollars was a personal one, running to the plaintiff's decedent, and that there is no survival of a right of action.

It is to be noted that Mary Rudrick in the contract assumed certain obligations "should she be survived by John Mohler, her husband." On the other hand, there is no provision in the contract that the obligations assumed by Mohler should be contingent upon Mary Rudrick surviving him. So far as his obligations are concerned, it seems to us that the plain wording of the contract shows that the obligation on his part was absolute.

It will be noted, furthermore, that the petition avers that Mohler never transferred the insurance, which he had agreed to transfer. She had performed her part of the contract. To this extent, he did not perform his part. For him to fail to carry out any part of his obligations, when she had performed her part in full, would be unfair, and would be, in legal effect, a fraud. Had he turned over the policy, she, or her estate, would have had a right to realize upon it, if enforceable. The contract provides that if she be unable to collect upon it, or if it should be forfeited, then this $1,000 should be payable out of his estate. If, therefore, the right to collect upon the policy, if it had been assigned, existed in plaintiff, as it obviously would, then it follows that her estate should be entitled to $1,000, which Mohler agreed should be paid if the policy be not collectable, or forfeited.

We find an instructive case reported in 87 Mass. (5 Allen), 454, 81 Am. Dec., 758, the case being *Smith* v. *Allen,* the syllabus of which is as follows: "A legal contract and promise of marriage made in good faith by a woman to one who has executed to her a deed of land, for the purpose of inducing her to marry him, furnishes a good consideration for

the deed; and she will be entitled to hold the land against his creditors, although the marriage is prevented by his death.''

We regard it as a sound and sensible rule of law that, in the event of a contract between husband and wife, or prospective husband and wife, being ambiguous, the construction of the contract most favorable to the woman shall be given. She is regarded as the weaker vessel, and the natural and proper tendency of the courts is to protect the weak.

Attention is called to the case of *Deller* v. *Deller,* 141 Wis., 255, 124 N. W., 278, 25 L. R. A. (N. S.), 751, the third paragraph of the syllabus of which is as follows: ''In construing an antenuptial agreement the general rule applies that the intention of 'the parties is controlling; but, so far as the contract is ambiguous and the intention doubtful, that construction which is most favorable to the widow should be adopted if consonant with reason and if no violence is thereby done to the language used.''

Counsel for plaintiff in error stress, and we think justifiably, the case of *Barlow's Admr.* v. *Comstock's Admr.,* a case from the Kentucky Court of Appeals, reported in 117 Ky., 573, 78 S. W., 475. The contract in that case, while much shorter, was somewhat similar to the contract in the case at bar, and was in the following language:

''Whereas marriage is about to take place between Peter G. Barlow and Mrs. Lucinda Comstock, all of Washington county, State of Kentucky: This marriage contract between the Parties whose names are hereunto subscribed, witnesseth: The said Peter G. Barlow agrees to give to said Mrs. Comstock five hundred dollars to be paid at his death,

and to the payment of the same hereby binds himself, his administrators, executors, heirs and assigns as stipulated. The said Lucinda Comstock agrees and binds herself to make no claim to dower or homestead or other distributable right, interest, or share in the real or personal property of said Barlow, and hereby releases, relinquishes, and waives all claim to dower, homestead, or to other distributable right or share in the property, real or personal, of said Barlow. Said Barlow agrees that said Mrs. Lucinda Comstock shall have the exclusive right to the use and control and dispose of what personal effect she has, before, during or after the marriage, free from all claims of said Barlow, his heirs, administrators, executors and assigns. The said Barlow is to furnish a decent support during his natural life. Witness our hand this —— day of July, 1881.

"Peter G. Barlow
her
"Lucinda    X    Comstock.
mark
"Attest: Palmer Grundy, Isaac L. Janes."

The facts in that case showed the marriage of the parties, the death of the wife, the subsequent death of the husband, an action brought to settle his estate, and a claim filed in that estate by the administrator of the wife, in which he sought to recover the sum of $500, with interest. To that pleading Barlow's administrator filed a demurrer, on the ground that the sole consideration for the payment of the $500 was the release by Mrs. Comstock of her claims to dower, homestead, and other

distributable rights in the husband's estate, in the event that she should survive him, that this was a stipulated amount to be paid her, in lieu of all her rights, and that as she died prior to her husband she never became vested with any right to this $500, and that consequently the claim was not enforceable. The Kentucky Court of Appeals in passing upon this case said: "We can not concur in this contention. There were two considerations which entered into the execution of the antenuptial contract by Mrs. Comstock—one, the prospective marriage, which was alone an adequate consideration therefor; the other the release of all claim by her of her inchoate rights as surviving widow. The obligation assumed by Peter Barlow in the contract of July, 1881, to pay Mrs. Comstock $500 at his death, is unconditional. It contains no such qualification as appellant seeks to inject into it. Nothing is said about her death, or that the contract sued on was to be enforceable only in case she survived her prospective husband, and, we think, is in no wise dependent upon such a contingency. In an unbroken line, the authorities favor a liberal construction of these contracts, for their purpose is to prevent strife, secure peace, and adjust and settle the question of marital rights in property."

We are of the opinion, therefore, that the common pleas court in sustaining the demurrer to plaintiff's first cause of action committed error, and the judgment of said court is therefore reversed, and the cause remanded for further proceedings.

*Judgment reversed and cause remanded.*

SHERICK, P. J., and LEMERT, J., concur.