### BRENHOLTS v BRENHOLTS

Ohio Appeals, 2nd Dist, Franklin Co

No 2480. Decided March 29, 1935

Blanchard, TouVelle & Nida, Columbus, for plaintiff in error.

Hedges. Hoover & Tingley, Columbus, for defendant in error.

## OPINION

By BARNES, J.

Counsel for defendant in error, in their brief, raise a procedural question as to

whether or not the cause is properly in this court. It appears that the trial court rendered a written opinion and the same was filed in the Clerk's office, as an original paper in the case. Immediately following, counsel for defendant filed a motion for new trial, and several months later it appears that the court overruled the motion for new trial and entered judgment. After the entry of judgment defendant failed to refile anew a motion for new trial.

While this is an irregularity, we do not think that it is prejudicial. There is no provision of law for filing the written opinion of the court as a paper in the case. This opinion is not of similar import to the verdict of a jury. Strictly speaking, when no jury. the time for filing motion for new trial would be after the entry of judgment. A trial court might properly and informally entertain a motion for rehearing after releasing the original opinion. However, the journal entry of the trial court discloses that it passed on a motion for new trial and this would cure any and all possible error.

The remaining sole and only question for determination is as to the effect of the ceremonial marriage between the plaintiff, Marguerite Brenholts, and one Thomas C. Jones.

Plaintiff contends that by reason of the fact that Thomas C. Jones then had a wife living. from whom he had not been divorced. the attempted marriage of the plaintiff was void ab initio. and by reason thereof she is entitled to a continuation of the monthly payments as provided in the contract of separation, introduced in evidence as Exhibit A.

On the other hand, counsel for defendant urge a reversal of the determination and judgment of the trial court on the ground that the phrase "until she remarries", as contained in the first paragraph of subdivision 3 of the articles of separation, means an act or ceremony of marriage and not the status of the parties thereafter.

We have been cited to many excerpts from text books and court decisions, wherein it is announced that the word "marriage" is used in two senses. We quote the following from Bishop on Marriage, Divorce, etc., Volume 1, page 4:

"The word 'marriage' is used in two senses. It may mean the solemnity. by which two persons are joined together in wedlock, or it may mean their status when they have been joined."

We do not deem it necessary or profitable to go into any prolonged discussion on the meaning of the term "marriage". Suffice it to say, under varying circumstances it may refer to the ceremony or act of marriage or to the status of the parties after the ceremony. That the phrase "until she remarries," as used in the paragraph of the articles of separation, refers to a status was manifestly the intent of the parties.

It directly appears in the paragraph of the articles of separation that the monthly payments were for the support of Marguerite Brenholts. When and if Marguerite Brenholts remarried, the obligation to support would be that of the then husband. No other inference arises under the agreement of separation. The mere ceremony was not the thing in mind; it was necessarily the status which would follow.

All text writers and courts are uniform in their conclusions and determinations that a bigamous marriage is void ab initio.

By statute in this state, as well as in many others, certain rights are established and remedies given. notwithstanding the infirmity in the marriage contract. For instance, §8591, GC, contains the following provision:

"The issue of parents whose marriage is null in law, shall nevertheless be legitimate."

The Supreme Court of Ohio, in the case of Vanvaley v Vanvaley, 19 Oh St, 588, determined that a divorce granted to the wife on the ground that the husband had another wife living at the time of the marriage. may carry with it an order for alimony. This question is predicated upon the direct provisions of our statutory law.

Under §11979, GC, Subdivision 1, we find the following:

"1. That either party has a husband or wife living at the time of the marriage from which the divorce is sought."

Sec 11990, GC, authorizes the allowance of alimony to the wife in all instances where the divorce is granted by reason of the husband's aggression.

The statute relative to bigamy might permit a nicety of definition in that the crime is complete at the termination of the ceremony. The statute in no sense recognizes the legality of the contract. Its purpose is to punish for offenses against chastity.

The Supreme Court of Ohio, in the case of Smith v Smith, 5 Oh St, 32, very clearly

312

analyzes this situation. The syllabus reads as follows:

"A woman having a husband living at the time of her second marriage, is not entitled to dower in the real estate of her second husband; the second marriage being **absolutely void**, notwithstanding the provisions of the first section of the act relating to divorce, and the seventh section of the crimes act relating to bigamy."

(The black face is ours).

We also cite the following as supporting the Ohio rule that a bigamous marriage is void ab initio.

18 R.C.L., 412:
L.R.A., 1916—C, page 711:
9 R.C.L., 274

Counsel for defendant cite the case of Lehman v Lehman, 225 Ill. App., 514. This case is claimed to be identical in its facts with the case at bar. We think there are substantial distinguishing facts. In the reported case the wife procured a divorce in Illinois, and under the law of that state a divorced person is not permitted to marry within one year. This woman, after procuring her divorce, three months thereafter married at Newark, New Jersey, and continued her marital status for fifteen months in New York and Maine. She then returned to Illinois and procured an annullment of her second marriage, on the ground that it had been contracted within a year after her divorce and in violation of the statutes of the State of Illinois. This marriage in New Jersey was lawful and the cohabitation of the parties in New York or any other place outside of Illinois would be no infraction of the law. The second marriage was not bigamous, nor was it void ab initio. At most, it was only voidable.

After annullment of her marriage in Illinois, she sought to recover monthly payments provided for in the articles of separation with her first husband. Under the terms of this agreement the payments were to be discontinued on her remarriage. In the reported case recovery was denied and in this conclusion, under the facts stated, this court would have no difficulty in concurring in the judgment. In the reported case the plaintiff was seeking to take advantage of her own wrong. She would be chargeable with knowledge of the law of Illinois, where she resided and procured her divorce. Her articles of separation and agreement with her former husband would be general in character and operation. The provision therein that upon her remarriage monthly payments should cease, meant a legal marriage. There was a legal marriage followed by legal cohabitation. The fact that it was subsequently annulled as violative of the divorce decree entered in the State of Illinois, would not render it void ab initio. In so far as the reported case bases its conclusion on a determination that the word "remarries." as contained in the contract, was intended by the parties to refer to the ceremony or act of marriage as distinguished from the status or relation thereafter, we can not accept it as controlling law in the instant case. We quote from the case of **Umbenhower v Umbenhower, 12 C.C. (N.S.), 289-294:**

"Marriage, strictly speaking, is not the mere civil contract, but is a status created by contract."

Also see **38 Corpus Juris, 1272 to 1294.**

"The performance of the mere ceremony does not constitute a marriage. It must follow and be founded on contract."

**Unbenhower v Labus, 84 Oh St, 238-243.**

"Marriage, in contemplation of present day law is a civil contract—nothing more."

**Charrier v State, 29 O.C.A., 97-100.**

In addition to the authorities cited we have examined the very able and comprehensive opinion of the trial court and fully agree with his conclusions and determination.

Finding no prejudicial error, the judgment of the trial court will be affirmed, at costs of plaintiff in error.

Exceptions will be allowed.

KUNKLE, PJ, and HORNBECK, J, concur.