DARLING, APPELLEE, *v.* DARLING, APPELLANT█

[Cite as Darling v. Darling (1975), 44 Ohio App. 2d 5.]

(No. 33568—Decided January 30, 1975.)

*Mr. Donald K. Barclay,* for appellee.
*Mr. Louis E. Weitz,* for appellant.

JACKSON, J.   Plaintiff appellee, Jeanne C. Darling, and defendant appellant, Robert C. Darling, were married on December 31, 1949. A journal entry granting the plaintiff a divorce from the defendant was filed on March 17, 1970. A separation agreement executed between plaintiff and defendant on February 2, 1970, was incorporated into the divorce decree. Clause four of this separation agreement provided as follows:

"4. *Alimony to wife.* The Husband shall pay to the Wife for her alimony so long as she is alive and not remarried but for a period not to exceed five (5) years, the sum of Five Hundred Dollars ($500.00) per month."

On November 13, 1971, plaintiff, Jeanne C. Darling, remarried. At this time, defendant stopped making alimony payments to plaintiff. However, in an entry by the Common Pleas Court of Cuyahoga County, dated April 13, 1972, plaintiff was granted an annulment of her second marriage

on the ground that this second marriage had never been consummated. Plaintiff's second husband did not contest the annulment which was therefore granted on the basis of plaintiff's uncontroverted complaint and evidence.

The operative clause of the annulment entry decreed that: "* * * the marriage contract heretofore existing between the parties be and is hereby set aside, dissolved and held null and void as if the same had in fact never occurred."

On December 13, 1972, more than one year after she had remarried, plaintiff filed a motion to show cause requesting that the Domestic Relations Court of Cuyahoga County order her first husband, the appellant herein, to pay her alimony as required under clause four of the separation agreement set out above. In the meantime, defendant had remarried in October of 1970.

Relying upon *Brenholts* v. *Brenholts* (1935), 19 Ohio Law Abs. 309, and the proposition of law that an annulled marriage is considered to have never existed, the Domestic Relations Court found that defendant had wrongfully refused to pay plaintiff alimony payments from November, 1971, the time of plaintiff's remarriage, through December, 1972, when plaintiff filed her motion to show cause. The court then granted judgment for plaintiff in the amount of $6,500.

Defendant appealed from this judgment. His appeal is founded on two alternative propositions of law:[2]

(1) The trial court erred in holding that the annulment of plaintiff's second voidable marriage revived the obligation of plaintiff's first husband to pay alimony to plaintiff.

(2) If the annulment of plaintiff's voidable second marriage does reinstate the alimony obligations of plaintiff's first husband, then the trial court erred in not permitting defendant, as plaintiff's first husband, to collaterally attack the annulment as fraudulent and collusive.

---

[2]Defendant listed three assignments of error in his appellate brief, but did not separately brief these three assignments.

Because we agree with the first proposition of law set out above, we do not reach the second. Both parties cite *Brenholts* v. *Brenholts, supra,* in support of their arguments. *Brenholts* also involved a divorce decree ordering a first husband to pay alimony to his ex-wife until she remarried, and a second marriage of the wife which was later annulled. The order of the trial court reinstating the alimony obligations of the first husband was affirmed by the Court of Appeals for Franklin County.

However, a major difference exists between the facts of the case at bar and those presented by *Brenholts*. In *Brenholts,* the wife's second marriage, unknown to her, was bigamous because her purported second husband had a living wife from whom he had not been divorced. By contrast, the annulment in the case at bar was granted on the basis of non-consummation.

A bigamous marriage is void *ab initio* and of no legal purpose. One who is already married has no capacity to enter into another marriage contract, either ceremonial or common law. *Johnson* v. *Wolford* (1927), 117 Ohio St. 136; *Smith* v. *Smith* (1885), 5 Ohio St. 32; *State, ex rel. Allen,* v. *Wagoner* (1961), 88 Ohio Law Abs. 218. By statute, in Ohio, an otherwise valid marriage may be annulled if it has not been consummated. R. C. 3105.31(F). A nonconsummated marriage is not void *ab initio,* but merely voidable.

There are major conceptual differences between void and voidable marriages. A voidable marriage is one which is valid when entered and which remains valid until either party secures a lawful court order dissolving the marital relationship. By contrast, a void marriage is invalid from its inception, and the parties thereto may simply separate without benefit of a court order of divorce or annulment. *Holtz* v. *Dick* (1884), 42 Ohio St. 23; *Williams* v. *Williams* (1951), 90 Ohio App. 369; *Abelt* v. *Zeman* (C. P. 1961), 86 Ohio Law Abs. 109.

Since plaintiff's second marriage in the case at bar was merely voidable and not void *ab initio,* this second marriage was valid prior to the annulment decree. By entering into a second valid marriage, plaintiff voluntarily

terminated her right to receive alimony from the defendant, her first husband. Although an annulment decree technically operates to hold both void and voidable marriages as nullities, as though they had never existed, this legal fiction of retroactive nullification of a once valid marriage should not be applied so as to work an injustice. The "relation back" doctrine is a legal fiction used to promote justice between the parties to a voidable marriage.

The factors involved in a decision concerning whether to apply the fiction of relation back of annulment decrees so as to revive a wife's right to alimony from her former husband were thoroughly analyzed by the Supreme Court of New Jersey in *Flaxman* v. *Flaxman* (1971), 57 N. J. 458, as follows:

"[3] Of course we recognize that there is a strong policy of insuring some source of support for a wife who obtains a divorce. Generally this support will come from her former husband. However * * * most separation agreements as the one in the present case mandate termination of such support upon a wife's remarriage. One of the reasons for termination is that, upon remarrying, the wife obtains a new source of support. This does not mean, however, that termination of the second marriage reinstates support from the first husband merely because support is unavailable from the second husband. We know, for example, that if the remarriage ends in divorce or if the second husband dies penniless, she may not look again to her former husband * * *. And there are sound reasons for not allowing her to do so. When she enters into a second marriage ceremony, she holds herself out as having remarried. And her first husband is entitled to rely upon her new marital status. He may assume that his financial obligations to her have ceased and reorder his own affairs accordingly. This freedom from such obligations may lead him to change his mode of living or even to remarry and establish a new family. We can see no sound reason for treating an annulment any differently from a divorce or death in this regard. A husband whose wife enters into a voidable second marriage is no less likely to rely

on the validity of that marriage than is one whose former wife enters into a valid second marriage. In the present case it appears that the defendant has remarried and taken on all of the responsibilities of that remarriage. We think that under the terms of the separation agreement as incorporated into the divorce decree * * * he was entitled to so rely and recommit to other purposes assets previously chargeable to alimony. (Citations omitted.)

"Were we to hold otherwise, a husband, whose divorced wife had remarried, could never be certain that the financial responsibility for his former wife would not shift back to him. Moreover, only she and her second 'husband' ordinarily would know whether there was cause for an annulment, and the option would be hers either to annul or ratify the marriage * * *. Thus, where the marriage is voidable—a circumstance of which the former husband is probably not even aware—the marriage nevertheless might continue indefinitely. The former husband's affairs should not be left in limbo subject to the conduct of parties to a relationship of which he has no part. (Citation omitted.)

"Another difficulty is that in many cases the wife has the option of obtaining an annulment or a divorce from the second husband. If alimony could be revived by annulling the second marriage, the wife could choose between two sources of support. A divorce could lead to alimony from the second husband while an annulment could reinstate alimony from the first. She should not be given this control. After all, it was she who entered into the second marriage and the subsequent vicissitudes of that marriage should not be attributable to her first husband.

"Finally, a former husband would not be a party to the annulment proceedings of the remarriage nor ordinarily would he be in a position to protest them since he could not see beneath the surface of the second marriage and know the validity of the grounds urged for the decree. We do not believe that a husband's alimony obligations should be determined by circumstances over which he has little or no knowledge or control."

The factors considered by the Supreme Court of New

Jersey in *Flaxman* have equal application in this state. We accordingly hold that where the right to receive alimony from a former spouse has terminated because the alimony recipient has remarried, such right to alimony is not revived by an annulment of the second marriage where the second marriage was merely voidable and not void, *ab initio.*

The decision of the trial court granting judgment for the plaintiff is accordingly reversed, and judgment is hereby entered for the defendant appellant, Robert C. Darling.

*Judgment reversed.*

KRENZLER, P. J., and MANOS, J., concur.