LANG, APPELLEE, *v.* REETZ-LANG, APPELLANT.

---

(No. 84AP-02—Decided February 28, 1985.)

*Jeffrey T. Folkerth,* for appellee.
*Ric Daniell,* for appellant.

McCORMAC, J. In this cause, the court is presented with the issues of whether, under R.C. 3105.31(F) and 3105.32(F), a party seeking annulment must demonstrate fault on the part of the defendant, and whether promises contained in an antenuptial agreement, which agreement omits to provide that subsequent nonconsummation of the marriage would void the agreement or render it unenforceable, are extinguished by nonconsummation under *Gross* v. *Gross* (1984), 11 Ohio St. 3d 99.

On June 23, 1982, Lynn Reetz-Lang, defendant-appellant, and Earl Lang, plaintiff-appellee, entered into an antenuptial agreement which provided, in part, that in consideration of marriage the real estate known as 268 East Royal Forest Boulevard, then owned solely by plaintiff, was to be placed in the names of both parties in a tenancy by the entireties. The wedding ceremony took place on July 31, 1982. The deed was executed by plaintiff prior to the wedding, held by a third party until after the wedding, and then recorded. On the parties' wedding night, they failed to consummate the marriage and, thereafter, neither party made any further attempt to consummate.

In December 1982, plaintiff filed a complaint for annulment and later an amended complaint for annulment or divorce. On September 27, 1983, the trial court issued its decision on the matter, awarding plaintiff an annulment. Findings of fact and conclusions of law, issued on November 14, 1983, determined that the marriage was voidable under R.C. 3105.31(F), that the antenuptial agreement was rescinded for failure of consideration, and that the plaintiff was restored to sole title of the real estate.

Defendant has stated four assignments of error. Her first assignment of error is as follows:

"I. The trial court committed error as a matter of law by failing to make any determination pursuant to O.R.C. § 3105.31(F) of a condition existing prior to marriage which prevented consummation."

R.C. 3105.31(F) provides, as a ground for annulment, the following:

"That the marriage between the parties was never consummated although otherwise valid."

Defendant argues that R.C. 3105.31(F) must be read as requiring that one or both of the parties must have been incapable of performing coition at the time of the marriage to constitute the ground of nonconsummation. Plaintiff, on the other hand, argues that R.C. 3105.31(F) does not require that a party prove that one is incapable of intercourse, but, rather, that intercourse did

not take place. In effect, defendant is arguing that the ground of nonconsummation means impotency; incapability to perform the act. Plaintiff's approach is that the statute means exactly what it says and the reasons for nonconsummation are irrelevant.

R.C. 3105.31(F) does not require that a condition exist prior to marriage which would prevent consummation of the marriage and which continues throughout the marriage to the point of annulment. While R.C. 3105.31(F) includes the condition of impotency, it does not mean impotency because the drafters could have used that term as it was used in the divorce section to mean nonconsummation. Therefore, the pre-existence of a condition preventing consummation is not a requisite for annulment for nonconsummation. Rather, R.C. 3105.31(F) should be interpreted as requiring some finding of "fault" on the part of defendant. (See discussion *infra*.)

The first assignment of error is overruled.

As to the second assignment of error, defendant states:

"II. The trial court committed error as a matter of law by failing to make any finding of fault pursuant to O.R.C. § 3105.32(F)."

The proper interpretation of R.C. 3105.31(F) and 3105.32(F) is that an action based upon nonconsummation contemplates that the defendant is somehow at fault. The language utilized in R.C. 3105.32(F) imparts this meaning — the "party aggrieved" brings the action for nonconsummation. One treatise writer has indicated that the draftsmen had in mind, in addition to impotency, a willful refusal to consummate the marriage without good cause as a ground for annulment. The court finds this is to be a logical interpretation of the nonconsummation subsection. Where one of the parties has willfully or knowingly refused or avoided consummation of the marriage, the other has a proper ground for annulment, although the marriage was valid otherwise.

That the trial court failed to include a definitive assignment of "fault" to defendant as a prerequisite to the decreeing of the annulment, however, cannot be said to have been prejudicial error and ground for reversal, inasmuch as the record below clearly demonstrated that defendant knowingly avoided, if not outright refused, participation in intercourse with plaintiff. See *Anderson* v. *Anderson* (1966), 8 Ohio Misc. 97 [37 O.O.2d 108] (level of proof for ground must be clear and satisfactory).

The second assignment of error is overruled.

Defendant, for her third and fourth assignments of error, states:

"III. Even if the trial court was correct in granting an annulment, the court committed error in conveying the property to the appellee without a showing of fault by appellant.

"IV. The trial court committed error when it conveyed the property to appellee."

Defendant argues that the Ohio Supreme Court's holding in *Gross, supra,* requires that this court reverse the trial court's conveyance of the real estate mentioned in the antenuptial agreement to plaintiff. Plaintiff asserts that the trial court properly conveyed the property back to him upon failure of the consideration, the marriage.

A marriage which fails for nonconsummation is not void *ab initio* but, rather, is voidable. *Darling* v. *Darling* (1975), 44 Ohio App. 2d 5 [73 O.O.2d 5]. That is, the marriage is otherwise valid when entered into until one of the parties obtains a court order annulling the relationship. Marriage is said to be the highest consideration in the law; marriage to be thereafter consummated is a valuable consideration which will support a promise. *Rudrick* v. *Thull* (1931),

39 Ohio App. 69; *Groves* v. *Groves* (1902), 65 Ohio St. 442.

The parties were married on July 31, 1982. As part of the consideration for the marriage, plaintiff placed the name of his house in the names of both parties. As a result of conduct by defendant, the marriage was not consummated. The parties remained married for only four months, much of which time was spent in fighting and adversity. As pointed out previously, the marriage was properly annulled on the grounds of nonconsummation. The parties lived in the house for four months, during which time defendant had done some painting and other maintenance, but she had not expended any money. The type of work that she did appeared to be the kind that a person living in a house would reasonably perform.

The trial court conveyed the property back to plaintiff, finding no consideration for the transfer of the property. The record fully supports that finding.

As pointed out in *Darling, supra,* an annulment decree operates to hold the marriage as a nullity as though it had never existed with the limitation that the legal fiction of retroactive nullification should not be applied to work an injustice. *Darling, supra,* at 8.

In this case, the consideration for the transfer of the property was a marriage valid at the time of its inception. By finding grounds for annulment in favor of plaintiff, the trial court has found that the marriage was invalid from its inception. Consummation of a marriage in this case, and, ordinarily, is considered an essential part of the marriage contract which is recognized by the fact that the General Assembly has declared nonconsummation to be grounds for annulling a marriage and declaring it void from its inception. Thus, the trial court properly found that there was no consideration for transfer of the property of plaintiff to defendant since the marriage ceremony was not followed by the expected consummation.

Justice is served by retroactive nullification, although the parties failed to expressly provide therefor in their prenuptial agreement. It is true, as indicated in *Darling,* that retroactive nullification should not be applied where it would operate to work an injustice. In *Darling,* retroactive nullification would have been an injustice because the first husband would have been required to pay alimony to his former wife after nullification of her second marriage had the fiction been employed. In this case, retroactive nullification is the only way to achieve justice. As pointed out, defendant failed to consummate the marriage. Thus, there was no consideration for the marriage or for transfer of the property. She has not invested any money in the property and would, thus, receive a windfall for her four-month failure to consummate the marriage if she were to receive the consideration for a marriage contract that was declared to be void at its inception.

It is unrealistic to expect the parties to have placed a condition that the marriage first be consummated in the contract to transfer the property. Consummation of the marriage was an inherent part of the marriage contract and was an implied condition of the agreement. Moreover, the agreement was not an antenuptial agreement of the type referred to in *Gross, supra.* The rationale of *Gross* is inapplicable because the fault in *Gross* was not one that went to the very heart of the marriage contract causing the marriage contract to be annulled and void at its inception. In *Gross,* the court was referring to conduct of a party that was ground for a divorce later.

Defendant's third and fourth assignments of error are overruled.

Defendant's assignments of error

are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

REILLY, P.J., concurs.

CASTLE, J., dissents.

CASTLE, J., retired, of the Twelfth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.

CASTLE, J., dissenting. I must respectfully disagree with my brothers in the majority as to the result they reached in disposing of defendant's second, third and fourth assignments of error.

It would appear that, after the failure to consummate the marriage on the wedding night, both parties were at fault, in that neither made any further attempt at consummation. In the *Darling* case, the court declined to employ the legal fiction of retroactive nullification to a nonconsummated and annulled second marriage where the fiction would have operated to work an injustice upon the first husband of the wife who, had the fiction been employed, would have been required to pay alimony to the exwife upon the annulment of her second marriage. The court found that the relation-back doctrine should be employed to promote justice between parties to a voidable marriage. In *Gross* v. *Gross* (1984), 11 Ohio St. 3d 99, the Supreme Court of Ohio held that the promises of the parties in an antenuptial agreement are valid and enforceable even by one at fault, when the agreement provides for the disposition of property and for support or alimony upon divorce or separation, thus indicating contemplation of future misconduct or fault, where they fail to expressly provide that such misconduct or fault would extinguish the promises in the agreement. The *Gross* court held that, if the parties had intended that future misconduct would abrogate the promises, the parties "could very well have made this clear within the terms of the agreement." *Id.*

The antenuptial agreement in the instant matter provided, in pertinent part, as follows:

"Lynn Marie Reetz and Earl B. Lang, in contemplation of and in consideration of marriage promise and agree as follows:

"1. The residence presently owned by Earl B. Lang at 268 E. Royal Forest Boulevard, Columbus, Ohio will be placed in the names of * * * [both] by a deed of joint ownership with right of survivorship (tenancy by the entireties) to be signed prior to marriage and placed with * * * [a third party], for recording after marriage, delivery of the deed to be effective on marriage."

Nowhere did the parties give any indication that they contemplated any future misconduct to arise in the marriage, the agreement failing to provide for proper division and alimony upon future divorce or separation of the parties; neither did the parties provide in the agreement that the promise to convey would be conditioned upon a consummated marriage but, rather, only upon marriage. Contrast *Gross, supra,* at 101, and *Rudrick* v. *Thull* (1931), 39 Ohio App. 69, at 70-71.

Defendant submits that the omission of a requirement that the marriage be consummated as a prerequisite to the enforceability of the promise is analogous to the situation in *Gross,* where the parties failed to express that marital misconduct would extinguish their agreement. Defendant argues that had they intended that nonconsummation would abrogate the agreement they could very well have so provided and that the holding of *Gross* is controlling. I agree.

Given the determination of the majority as to defendant's second assignment of error, that the awarding of a decree of annulment for nonconsumma-

tion necessarily involves a determination of fault, I would hold that the *Gross* decision is controlling in this matter. I cannot agree that the antenuptial agreement in *Gross* was different in the ultimate result from the agreement in the case at bar; thus, the omission of a provision in the parties' agreement to the effect that nonconsummation of the marriage would be a prerequisite to enforceability of the promises is taken as representing the parties' intent that nonconsummation would not extinguish the promise. In my view, under the *Darling* doctrine and the facts in this case, justice would not be served by applying retroactive nullification and relation-back to effect a failure of consideration and to avoid the promises contained in the agreement where the parties failed to expressly provide for its abrogation.

I would reverse and remand this cause to the trial court.