OPINION
{¶ 1} Defendant-appellant, Raghad Zahar Alwattar, appeals from a judgment and decree of divorce entered by the Franklin County Court of Common Pleas, Division of Domestic Relations. For the following reasons, we affirm. *Page 2 
 {¶ 2} On February 26, 2007, plaintiff-appellee, Mohammed Zawahiri, filed a complaint for divorce. In response, Alwattar filed an answer and counterclaim for divorce.
 {¶ 3} At trial, Alwattar testified that she first met Zawahiri in January 2006 after Zawahiri's mother contacted Alwattar's mother and indicated that Zawahiri wanted to marry Alwattar. Alwattar and Zawahiri courted for a month before she accepted his proposal. The parties then obtained an Ohio marriage license. Because Alwattar and Zawahiri are Muslim and wanted to marry within their faith, they scheduled an Islamic marriage ceremony. On February 2, 2006, Zawahiri arrived at the home of the bride's father for the marriage ceremony. There, the imam presented him with an Islamic marriage contract.
 {¶ 4} As Mouamed Tarazi, the imam, later testified, marriage in the Islamic faith is premised upon the spouses' marriage contract. In order to be valid, an Islamic marriage contract must evidence the consent of both the bride and groom, contain the signatures of witnesses, and include a mahr. Throughout the trial, the witnesses used the terms "mahr" and "dowry" interchangeably. However, unlike a dowry, a mahr is not money or property that a wife brings her husband. Rather, a mahr is a specific sum that a husband owes to his wife, which is payable upon divorce or death of the husband.
 {¶ 5} The marriage contract that Tarazi provided to Zawahiri was a pre-printed form that included a space for him to write in the amount of the mahr. Tarazi asked Zawahiri and the bride's father whether they had agreed on the amount of the mahr. Both responded that they had not previously discussed the mahr. At that point, the men present to witness the marriage ceremony suggested various amounts. Ultimately, Zawahiri and the bride's father settled on $25,000 for the "postponed" portion of the mahr. *Page 3 
They also agreed that the "advanced" portion of the mahr would consist of a ring and gold that Zawahiri and his family had already given Alwattar.
 {¶ 6} With the question of the mahr resolved, Tarazi conducted the marriage ceremony, during which Zawahiri and Alwattar signed the marriage contract. In relevant part, the marriage contract stated:
Mahr (Dowry)
 Advanced: As agreed
 Postponed: $25,000.00 (Twenty five thousand dollars)
 {¶ 7} Unfortunately, the parties' marriage quickly foundered. They never lived together and, instead, remained in their respective parents' homes while Zawahiri studied for his medical board exams and Alwattar completed her college degree. Due to their largely separate lives, the parties did not acquire any marital assets or debts. Therefore, the enforceability of the mahr provision of the marriage contract became the central controversy of the divorce proceedings. Alwattar argued that the marriage contract constituted a valid and enforceable prenuptial agreement that entitled her to an award of $25,000. In response, Zawahiri maintained that enforcement of the mahr provision would violate the Establishment Clause of the First Amendment of the United States Constitution and the Establishment Clause of Section 7, Article I of the Ohio Constitution. In the alternative, Zawahiri argued that the parties' marriage contract did not satisfy the conditions necessary for a valid and enforceable prenuptial agreement.
 {¶ 8} In its October 10, 2007 judgment entry and decree of divorce, the trial court granted the parties a divorce due to their incompatibility. Additionally, the trial court refused to enforce the mahr provision on two grounds: (1) the Establishment Clause of the Ohio Constitution prohibited court-ordered enforcement of a contractual provision *Page 4 
requiring performance of a religious act, i.e., the payment of the mahr; and (2) the parties entered the marriage contract under circumstances that rendered the contract invalid and unenforceable as a prenuptial agreement.
 {¶ 9} Alwattar now appeals from the trial court's October 10, 2007 final order and assigns the following errors:
 [1.] THE TRIAL COURT ERRED BY NOT ENFORCING THE MAHR TERM OF THE MARRIAGE CONTRACT UNDER GENERAL CONTRACT LAW.
 [2.] THE TRIAL COURT ERRED IN EVALUATING THE MARRIAGE CONTRACT, ALONG WITH THE MAHR PROVISION, EXCLUSIVELY AS AN ANTENUPTIAL AGREEMENT.
 [3.] THE TRIAL COURT ERRED IN FINDING THE OHIO CONSTITUTION BARS ENFORCING THE MAHR TERM.
 [4.] THE TRIAL COURT IMPROPERLY RELIED ON THE PURPORTED AVAILAIBLITY OF EXTRA-JUDICIAL ALTERNATIVES TO ENFORCING THE MAHR TERM, VIOLATING MS. ALWATTAR'S EQUAL PROTECTION RIGHTS.
 [5.] IF APPLICABLE, A PROPER APPLICATION OF THE GROSS STANDARD REVEALS THE TRIAL COURT ERRED BY NOT UPHOLDING THE MARRIAGE CONTRACT AS AN ANTENUPTIAL AGREEMENT.
 {¶ 10} For ease of analysis, we will address Alwattar's first and second assignments of error together. By these assignments of error, Alwattar argues that the trial court erred in analyzing the marriage contract as a prenuptial agreement, and not as a general contract. We find that Alwattar waived this argument by not asserting it in the trial court.
 {¶ 11} "`Ordinarily, reviewing courts do not consider questions not presented to the court whose judgment is sought to be reversed.'"State ex rel. Ohio Civil Serv. Emp. *Page 5 Assn., AFSCME, Local 11, AFL-CIO v. State Emp. Relations Bd.,104 Ohio St.3d 122, 2004-Ohio-6363, at ¶ 10, quoting State ex rel. Quarto MiningCo. v. Foreman (1997), 79 Ohio St.3d 78, 81. See, also, State ex rel.Gutierrez v. Trumbull Cty. Bd. of Elections (1992), 65 Ohio St.3d 175,177 ("Appellant cannot change the theory of his case and present these new arguments for the first time on appeal."); State ex rel. PIAPsychiatric Hosps., Inc. v. Ohio Certificate of Need Review Bd. (1991),60 Ohio St.3d 11, 17, fn. 4 ("Generally, an issue need not be considered on appeal if the issue was apparent at the time of trial and was not raised before the trial court."). In the case at bar, Alwattar made one argument to the trial court: the marriage contract was a valid and enforceable prenuptial agreement that entitled her to an award of $25,000. Both Alwattar's argument and the trial court's analysis focused upon whether the marriage contract satisfied the three conditions precedent necessary for the enforcement of a prenuptial agreement. Alwattar did not argue, and the trial court did not address, whether the court could enforce the marriage contract under general contract law.[1] Thus, applying the general rule of waiver, Alwattar waived that argument and cannot now assert it on appeal.
 {¶ 12} Alwattar, however, relies upon an exception to the waiver doctrine to argue that this court should decide her general contract argument. The Supreme Court of Ohio has recognized that the waiver doctrine is not absolute, and it has held that:
 When an issue of law that was not argued below is implicit in another issue that was argued and is presented by an appeal, we may consider and resolve that implicit issue. To put it *Page 6 
another way, if we must resolve a legal issue that was not raised below in order to reach a legal issue that was raised, we will do so.
Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.
(1993), 67 Ohio St.3d 274, 279 ("Belvedere"). In Belvedere, a condominium owners' association asserted a claim for breach of fiduciary duty against the condominium developer. In defending against this claim in the lower courts, the developer assumed that it owed a fiduciary duty to the association, and instead, it argued that it never breached this duty. Neither the trial court nor the court of appeals agreed with the developer's argument. Finally, on appeal to the Supreme Court of Ohio, the developer asserted for the first time that it did not owe the association a fiduciary duty. The Supreme Court analyzed whether a fiduciary duty existed because that legal issue was implicit in the issue the developer had raised below.
 {¶ 13} We agree with Alwattar that the issue of law she urges us to address on appeal is implicit in the issue she actually argued below. In Ohio, a court can only enforce a prenuptial agreement if: (1) the parties entered into it freely without fraud, duress, coercion, or overreaching; (2) there was full disclosure, or full knowledge and understanding of the nature, value, and extent of the prospective spouse's property; and (3) the terms do not promote or encourage divorce or profiteering by divorce. Gross v. Gross (1984), 11 Ohio St.3d 99, paragraph one of the syllabus. Although a prenuptial agreement must meet these three "special" conditions, in all other respects, prenuptial agreements are contracts and must comply with the law of contracts.Fletcher v. Fletcher (1994), 68 Ohio St.3d 464, 467. Consequently, prenuptial agreements must include all the elements of a contract, including an offer, acceptance, contractual capacity, consideration, and manifestation of mutual assent. Kostelnik v. Helper, 96 Ohio St.3d 1, *Page 7 2002-Ohio-2985, at ¶ 16 (setting forth the elements of a contract). Therefore, before considering whether a prenuptial agreement meets theGross conditions, a court must implicitly conclude that the prenuptial agreement contains all the elements of an ordinary contract. If a prenuptial agreement is not, in fact, a valid contract, the court need not address the Gross conditions. See, e.g., Lang v. Reetz-Lang (1985),22 Ohio App.3d 77, 80 (holding that the spouses' prenuptial agreement failed due to lack of consideration because the spouses never consummated the marriage).
 {¶ 14} While Alwattar argues on appeal a legal issue implicit in the argument she made below, we do not automatically exempt her argument from the waiver doctrine. Application of the waiver doctrine is discretionary. Hill v. Urbana (1997), 79 Ohio St.3d 130, 133. Generally, appellate courts will enforce the waiver doctrine absent "some extraordinary reason to disregard it." Kraft Constr. Co. v. CuyahogaCty. Bd. of Commrs. (1998), 128 Ohio App.3d 33, 46. See, also,Hill, at 139 (Moyer, C.J., dissenting) (noting that an appellate court may exercise its discretion to decide new arguments "only within the narrowest of confines").
 {¶ 15} Thus, we must determine whether Alwattar presents us with an "extraordinary reason" to forgo the application of the waiver doctrine. After comparing Alwattar's argument before the trial court with those asserted on appeal, we cannot find any such "extraordinary reason." Rather, our review discloses a significant reason to apply the waiver doctrine; namely, Alwattar's new appellate argument conflicts with the argument she advanced before the trial court.
 {¶ 16} In order for Alwattar to succeed on her general contract argument, we must conclude that the marriage contract is not a prenuptial agreement, and thus, that it need *Page 8 
not meet the Gross conditions before a court can enforce it. Consequently, Alwattar now contends on appeal that the marriage contract does not constitute a prenuptial agreement. However, at trial, Alwattar asserted a contrary argument. Below, Alwattar argued that the marriage contract was a valid prenuptial agreement, and she insisted that the trial court enforce it as such. Put more simply, before this court, Alwattar seeks a ruling that the marriage contract is not a prenuptial agreement, while before the trial court, Alwattar sought a ruling that the marriage contract was a prenuptial agreement.
 {¶ 17} Appellate courts are particularly loathe to depart from the waiver doctrine when a party makes an argument on appeal that directly contradicts the argument asserted below. Republic Steel Corp. v. Boardof Revision (1963), 175 Ohio St. 179, 184-185 (holding that issues "which are diametrically opposed to the theory upon which the plaintiff proceeded below can not be raised for the first time on review"). "`The theory upon which the case was submitted and argued in the [trial] court cannot, when an adverse judgment results, be discarded and a new, contradictory theory be substituted and successfully invoked on appeal.'" Sperle v. Michigan Dept. of Corrections (C.A.6, 2002), 297 F.3d 483, 494, quoting Corbin v. Baltimore O.R. Co. (C.A.6, 1956),234 F.2d 78, 81. See, also, Lyons v. Jefferson Bank Trust (C.A.10, 1993),994 F.2d 716, 721 (stating that that court has been "particularly insistent" on refusing to consider new issues on appeal "where the theory advanced on appeal was in direct contradiction to the theory pursued in the trial court"); Wakefield v. Church of Scientology
(C.A.11, 1991), 938 F.2d 1226, 1229, fn. 1 (recognized that parties can assert "inconsistent claims" in the trial court, but an appellate court "reviews the case tried in the [trial] court; it does not try ever-changing theories parties fashion during the appellate process"). *Page 9 
 {¶ 18} Appellate courts refuse to review contradictory arguments because they offend the purpose behind the waiver doctrine. Rejecting an argument pursuant to the waiver doctrine, "protect[s] the role of the courts and the dignity of the proceedings * * * by imposing upon counsel the duty to exercise diligence in his or her own cause and to aid the court rather than silently mislead it into the commission of error."State ex rel. Quarto. Mining Co., supra, at 81. See, also, Mark v.Mellott Mfg. Co., Inc. (1995), 106 Ohio App.3d 571, 589 ("Litigants must not be permitted to hold their arguments in reserve for appeal, thus evading the trial court process."). When an appellant makes a contradictory argument on appeal, it has more than just "silently misled" the trial court into the commission of error; instead, it has affirmatively invited the error it complains of on appeal. "`It is the well-settled rule that a party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make.'" Fostoria v. Ohio Patrolman's Benevolent Assn.,106 Ohio St.3d 194, 2005-Ohio-4558, at ¶ 12, modified on other grounds,107 Ohio St.3d 1426, quoting Lester v. Leuck (1943), 142 Ohio St. 91, 92.
 {¶ 19} Because Alwattar's new appellate argument contradicts the argument she presented to the trial court, we will not apply theBelvedere exception in order to decide the new argument. Accordingly, we conclude that Alwattar waived the argument underlying her first and second assignments of error, and consequently, we overrule those assignments of error.
 {¶ 20} We next turn to Alwattar's fifth assignment of error, in which Alwattar asserts an alternative argument to the argument presented by her first and second assignments of error. By her fifth assignment of error, Alwattar argues that the marriage *Page 10 
contract is a valid and enforceable prenuptial agreement because it satisfies the Gross conditions. We disagree.
 {¶ 21} The validity of a prenuptial agreement is a question of fact best left to the trial court. Bisker v. Bisker (1994),69 Ohio St.3d 608, 610. An appellate court may only reverse the trial court's decision if the trial court abused its discretion. Id. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 22} As we stated above, a prenuptial agreement must meet three "special" conditions, the first of which requires that the agreement be freely entered into without fraud, duress, coercion, or overreaching.Gross, supra, at paragraph one of the syllabus; Fletcher, supra, at 466. A presumption of overreaching or coercion will arise if the prenuptial agreement is presented a very short time before the wedding ceremony and postponement of the ceremony would cause significant hardship, embarrassment, or emotional stress. Id. at 470. Additionally, the lack of opportunity to consult with counsel prior to executing the prenuptial agreement will signal the occurrence of overreaching or coercion. Id.
 {¶ 23} No one disputes that the marriage contract, and specifically the mahr provision, was not discussed until the day of the wedding ceremony. According to Zawahiri, the imam raised the issue of the mahr only two hours before the ceremony was scheduled to begin. At that point, family and guests had already arrived. After a hurried negotiation, Zawahiri agreed to a "postponed" mahr of $25,000 because he was embarrassed and stressed. Moreover, Zawahiri did not have the opportunity to consult *Page 11 
with an attorney prior to signing the marriage contract. Given these facts, we conclude that the evidence demonstrates that Zawahiri entered into the marriage contract as a result of overreaching or coercion. Therefore, the trial court did not abuse its discretion in finding that the marriage contract was not a valid prenuptial agreement. Accordingly, we overrule Alwattar's fifth assignment of error.
 {¶ 24} By Alwattar's fourth assignment of error, she alleges that the trial court refused to enforce the marriage contract because she is Muslim and had other avenues of relief available to her. Alwattar contends that the trial court would have enforced a non-Muslim's marriage contract, and thus, the trial court violated her equal protection rights. We disagree.
 {¶ 25} At the conclusion of its discussion of the mahr provision, the trial court stated:
 [Zawahiri] clearly agreed to undertake a duty to pay the mahr when he signed the Islamic marriage contract. Although not enforceable by this court, the court is hopeful [Alwattar] will be able to enforce the provision and obtain relief through other religious means. For example, according to the testimony, the husband could be jailed in Syria if he has not paid the dowry.
 {¶ 26} Alwattar attempts to warp this dicta into a violation of her constitutional rights. By making the above statement, the trial court merely expressed a hope that Alwattar could avail herself of a religious remedy to rectify a wrong that the court itself could not correct. The trial court stated that it could not right this wrong for two reasons: (1) the Establishment Clause of the Ohio Constitution prohibited enforcement of the mahr provision, and (2) the marriage contract was not a valid prenuptial agreement. Nothing in the above statement — or in any other part of the trial court's decision — indicates that the *Page 12 
trial court refused to enforce the mahr provision on the basis of Alwattar's religion or that it treated Alwattar differently due to her religion. Accordingly, we overrule Alwattar's fourth assignment of error.
 {¶ 27} By Alwattar's third assignment of error, she argues that the trial court erred in concluding that the Establishment Clause of the Ohio Constitution barred court-ordered enforcement of the mahr provision. Because we have concluded that the marriage contract is not a valid and enforceable prenuptial agreement, we find that this argument is moot.
 {¶ 28} For the foregoing reasons, we overrule Alwattar's first, second, fourth, and fifth assignments of error, and we find that Alwattar's third assignment of error is moot. Consequently, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations.
Judgment affirmed.
McGRATH, P.J., and PETREE, J., concur.
[1] We acknowledge that Alwattar cited two cases in her pre-trial statement (later adopted as her closing argument) in which out-of-state courts enforced the "dowry" provisions of Islamic marriage contracts under general contract principals. However, Alwattar employed both cases to argue that her marriage contract was an enforceable prenuptial agreement. At best, these citations amount to a glancing reference to the general contract argument. Arguments "merely insinuated" and not "actually articulated" are not preserved for appeal. McCoy v.Massachusetts Inst. of Technology (C.A.2, 1991), 950 F.2d 13, 22. *Page 1